## ILLINOIS CENTRAL RAILROAD COMPANY *v.* UNITED STATES.

### APPEAL FROM THE COURT OF CLAIMS.

No. 248.   Argued April 28, 1924.—Decided May 26, 1924.

For the purpose of securing the reduced rates for transportation of its property over land-grant railroads, the Government purchased goods for prices f. o. b. at place of shipment, paid the freight, and had shipment made by the sellers with government bills of lading. *Held,* that title passed at place of shipment, although the contracts of sale reserved to the Government the right of inspection and rejection at the place of destination and imposed certain duties there upon the sellers, and that goods so transported, and accepted by the Government, were entitled to the reduced rates of transportation.   P. 213.

57 Ct. Clms. 277, affirmed.

APPEAL from a judgment of the Court of Claims rejecting claims for additional compensation for transportation of freight.

*Mr. Benjamin Carter* for appellant.

The question is whether freights intended for government uses, but which the Government was under no obligation to accept until after they had reached destination, were, while in transit, "property of the United States" and lawful subjects of transportation rates at which, in virtue of land grants, "property of the United

States" should be transported. This and two other cases of other carriers which are before this Court arose out of the contumacy of disbursing officers in claiming for the Government a privilege which had been denied to it by repeated decisions of the Comptroller of the Treasury. That officer had first ruled in favor of the carriers in cases where commercial bills of lading had been used. The first device, then, of officers making shipments, was to require the use of government bills of lading; but the Comptroller held that the rights of the parties were not affected by this detail. Some over-zealous officers then had recourse to a form of purchase from producers of the materials by which purchase prices applied at the points of shipment. The shipments were on government bills of lading; but specific stipulations were (1) that, although the Government would pay, or advance, the freight charges, the shipper would be responsible for the shipment, including demurrage charges which might be incurred, and (2) that examination, in one form or another, would be made by the Government's officers after delivery at, or beyond, points of destination, that nothing would be accepted which did not successfully pass this test and that shippers would remove rejected materials and repay the transportation charges on those quantities.

Assuming, from the fact that government bills of lading were used and the fact, in some instances, that the shipper, as well as the consignee, was a government officer, appellant, upon delivering the freights, rendered and collected its bills at land-grant rates. Thereafter, it received intimations regarding the terms of the contract under which the shipments were made and, upon investigation, ascertained the facts here stated.

Land-grant rates are not lawfully applicable to any transportation, even though procured by officers of the United States, except of property of the United States.

Supplies ordered by and shipped to authorized officers of the United States, who were to test or inspect them, at or beyond destinations, and thus determine whether to reject or accept them, did not, while in course of transportation, belong to the United States.

The fixing of purchase prices to apply at points of shipment does not effect a transmission of title to commodities from the producers to the United States if the acceptance of the supplies by the United States depended, by contract, upon questions to be determined by its officers at or beyond destinations of the shipments.

The mere payment of freight charges by a consignee does not divest title to the freights out of the shipper and vest it in the consignee. *Clarkson* v. *Stevens,* 106 U. S. 505; *Gorman* v. *Kennedy,* 126 Mich. 182; *Smart* v. *Batchelder,* 57 N. H. 140; *Cornell* v. *Clark,* 104 N. Y. 451; *Smith* v. *Wisconsin Investment Co.,* 144 Wis. 151; *Wagar* v. *Farren,* 71 Mich. 370; *Pike* v. *Baughn,* 39 Wis. 499; *Blodgett* v. *Hovey,* 90 Mich. 571.

That the Government, by the practice here concerned, obtains the same benefit that would have followed from taking title at points of shipment on land-aided lines and paying land-grant rates, is immaterial. *United States* v. *Union Pacific R. R. Co.,* 249 U. S. 354; *Alabama Great Southern R. R. Co.* v. *United States,* 49 Ct. Clms. 522; *Louisville & Nashville R. R. Co.* v. *United States,* 50 Ct. Clms. 414; 54 Ct. Clms. 161.

The only practical effect of the use made of government bills of lading is to give this Court jurisdiction of transactions more than six years old at the time the suit was instituted. This misapplication by government officers of a government form was a legal fraud upon the railroad company; and, according to the adjudications in like cases, time did not begin to run against the assertion of the railroad's claim so long as its officers were in ignorance of the real facts. *Exploration Co.* v. *United States,* 247 U. S. 435.

*Mr. Blackburn Esterline,* Assistant to the Solicitor General, with whom *Mr. Solicitor General Beck* was on the brief, for the United States.

Mr. Justice McKenna delivered the opinion of the Court.

The question in the case is whether, in certain shipments of property for use by the United States, title to the property passed at the place of shipment or at the place of delivery. Or to state the question another way, whether the shipments while in transit were the property of the United States and properly transported at land-grant rates, or did not become the property of the United States until after receipt at destination and subject to commercial rates. The latter is the contention of the Railroad Company, although it rendered bills for and accepted payment of them upon the other view. Its explanation is, it believed that that view was correct, that is, believed the shipments were the property of the United States, and, so believing, rendered bills for $40,000 less than it was entitled to, and, so believing, accepted payment of them. For that $40,000, this action was brought. The Court of Claims decided against the Railroad Company and dismissed its petition.

There is no contest of the findings or of the decision of the Court of Claims other than that expressed in the contention above stated.

It appears from the findings that the Railroad Company is a corporation and in the operation of a system of railways, those on which the shipments with which this case is concerned were transported. Three of the railways of the system were constructed with the aid of public lands granted by Congress.

The shipments consisted of certain articles for use in government improvements of the Missouri River.

The contention seems to be that the shipments were to be tested or inspected at or beyond destinations and accepted or rejected there, but while in course of transportation were not to belong to the United States. To sustain this view, *Clarkson* v. *Stevens,* 106 U. S. 505, is cited. The case does not sustain the contention. It was decided that the intention of the parties was determinative, not an arbitrary rule of construction. In the case at bar the findings of the court demonstrate that the Government especially intended to avail itself of the fact that the shipments were to be transported over land-grant roads, and that it was entitled to deductions from the commercial rates.

The years of the shipments and the roads over which they were to be transported are given in Finding V, and the finding recites: " These materials and supplies were all purchased on invitation to bidders, proposals of bidders, and vouchers, on which payments were made to the sellers. The form of invitation on which bids were made invariably read: ' The prices will be for the articles delivered f. o. b. cars at [the place of shipment]. The successful bidder will procure the cars, but the United States will pay the freight and furnish shipping instructions and bills of lading. This arrangement is made to enable the Government to take advantage of land-grant rates, and will not operate to relieve the dealer of any responsibility as shipper that would attach if the delivery had been at destination.' This form of invitation was only used over land-grant or bond-aided roads, and was never used where delivery was to be made at point of use."

And the finding states that " The shipments were all made on Government bills of lading, which were accomplished, the articles inspected, and accepted at points of use by the proper Government officials."

We agree with the Court of Claims that " the United States and the contractors were privileged to write into their contract such terms as they saw fit " and that " pro-

visions for a final inspection at point of delivery or for the rendering of a further service by the contractor at that point were not inconsistent with and could not be invoked to nullify a specific provision under which the title to the property passed to the United States by delivery at the initial point of shipment to the carrier as agent. Land-grant rates were applicable." See *Hatch v. Oil Company*, 100 U. S. 124, 134, 135.

As we have seen the Railroad Company made land-grant deductions from commercial rates in the bills it rendered. It does not now show fraud or mistake of fact; its only excuse is that its " officers believed that the shipments belonged to the United States." It is not charged that the belief was engendered by any practices or artifices of the officers of the United States. And it seems to have had continuity for a long time. A finding of the Court of Claims is that " part of the claim presented, amounting to $2,511.68, relating to shipments from October 30, 1911, to March 7, 1912, was barred by the statute of limitations when this suit was commenced, March 23, 1918."

The Government dealt with the consignors as if the property was its—dealt with the Railroad Company as if the property was its, the Government's, and, as we have seen, the Railroad Company dealt with the Government on that assumption, and the contractors dealt with it on that assumption. The incidental regulations between it and the contractors cannot divest that ownership in the interest of the Railroad Company.

*Judgment affirmed.*