## UNITED STATES v. JACKSON.
### No. 11705.

Circuit Court of Appeals, Fifth Circuit.

Dec. 27, 1946.

William Cantrell, Jr., Sp. Asst. to U. S. Atty., of Dallas, Tex., and Hubert H. Margolies, Atty., Claims Div., U. S. Dept. of Justice, of Washington, D. C., for appellant.

F. B. Davenport, of Dallas, Tex., for appellee.

Before SIBLEY, WALLER, and LEE, Circuit Judges.

WALLER, Circuit Judge.

An order for Mexican pine lumber to be shipped to Kelly Field, San Antonio, Texas, was issued by the War Department of the United States and accepted by the Appellee. This case arose out of the following paragraph of that order:

"Please Furnish the following on the terms specified on both sides of this page and on the continuation sheets, if any, attached including delivery f. o. b. Destination (Freight collect, from Laredo, Texas)."

The lumber was shipped and delivered. No part of the freight was prepaid by either the shipper or the United States. The Government deducted all freight, including that from Laredo to Kelly Field, and paid the balance of the purchase price. Appellee sued to collect that part of the freight from Laredo to Kelly Field and recovered in the Court below.

Appellee's position is that the price agreed upon was the price of such lumber delivered at Laredo, and that it was sold "freight collect from Laredo" so that title would pass to the Government and so that it could convert the commercial bill of lading into a Government bill of lading and thereby take advantage of any land-grant, or otherwise preferential, railroad rates [1] that were available in "the transportation of property or troops of the United States" after it reached the United States.

The Government insists that the sale was "f. o. b. destination," to wit, Kelly Field, San Antonio, and that the seller agreed to deliver the goods to the buyer, at the place designated, free of normal transportation charges; that the parenthetical phrase "(freight collect, from Laredo, Texas)" did not engraft an exemption onto the agreement of the seller to deliver the lumber f. o. b. Kelly Field; that provision for the shipment on Government bill of lading from Laredo and for freight collect from Laredo did not convert the contract into an f. o. b. Laredo delivery, and that the term "freight collect from Laredo" was merely a shipping instruction and not a price term.

The Court below recognized the commonly accepted meaning of "f. o. b. destination" but thought that when such a term was followed by a statement that the freight was to be collected from a certain point it then became the duty of the Court to give effect to such an agreement of the parties.

"After all," the Court below stated, "it is the intent of the parties to a contract which governs. It is difficult to assume that that phrase was placed in the contract without some force, meaning, or reason.

\* \* \* \* \* \*

"To deprive the plaintiff of the effectiveness of that sentence is to take from him that which was deliberately placed in the contract by the drawer."

The Government has argued in its brief that the background of Government procurement policies and practices affirmatively shows that "freight collect from Laredo" was merely a shipping instruction by virtue of which the Government got title to the lumber earlier, and also was thereby afforded the privilege of diverting the shipments to points other than Kelly Field; and that it was the practice of the United States always to buy on a delivered price. There is, however, no proof in the record of any such procurement policy or practice of the Government, and the Court does not judicially know what its policy and practice was. We note, moreover, that none of the shipments was ever diverted, and, according to the Government's only witness, the shipments could have been diverted to a destination other than Kelly Field even though the parenthetical statement "freight collect from Laredo" had been omitted. If the Government had merely desired that title to the lumber should pass at Laredo in order to secure preferential, or land-grant, railroad rates, this would, doubtless, have been accomplished by inserting a provision in the contract that would be more apt and more readily understandable than the parenthetical phrase in question. The fact that shipments are to be tested or inspected at destination and rejected or accepted there does not prevent the passing of title at point of shipment or at some intermediate point if the parties so intend. Illinois Central R. Co. v. United States, 265 U.S. 209, 44 S.Ct. 485, 68 L.Ed. 983.

The only shipping instructions, found in the last paragraph of the order, are: "To be shipped on commercial B/L marked 'Government property for Government use,' commercial B/L to be converted to Government B/L at destination."

---

[1] Title 10, U.S.C.A. §§ 1375 and 1376; Title 49, U.S.C.A. § 65.

It is noticed that in these shipping instructions there is nothing said as to freight collect from Laredo, and it would seem that the proper place for such an insertion, if it were a shipping instruction, would be in the shipping instructions above quoted.

As against a record that is silent on the part of the Government in that respect stands the testimony of the shipper that the selling price of the lumber was the selling price of such lumber at Laredo, Texas. Since the contract is ambiguous, we may inquire as to the intent of the parties in order to arrive at the meaning of the contract. In doing this we find, according to the undisputed testimony, that the intention was to sell at the price of lumber delivered at Laredo.

The order was drawn by the Government and accepted by the shipper, and this should be taken into consideration in construing the contract, to the end that we should not deprive the acceptor of that which was deliberately placed in the contract by the one who drew and submitted it for acceptance by the shipper unless the context otherwise requires it.

The Government would have us accept the interpretation of its witness that the phrase "freight collect from Laredo" had no bearing whatsoever on the price, but was only a shipping instruction, as against the undisputed factual evidence that the selling price was that of lumber delivered to Laredo. We think, however, that the latter is entitled to greater weight than the opinion of a witness as to the interpretation of an ambiguous phrase, and that under the evidence it was a price term and not a shipping instruction.

The view of the Court below finds support in United States v. R. P. Andrews & Co., 207 U.S. 229, 28 S.Ct. 100, 52 L.Ed. 185. The judgment should be and the same is hereby,

Affirmed.

SIBLEY, Circuit Judge (dissenting).

I dissent. I do not think the written contract ambiguous, and I do not think the record sustains the outside circumstances set up in the majority opinion to control its construction. I do not think the time of passage of title to the lumber is at all material in this case, or that whether the freight is prepaid or to be collected at destination would have any effect on the passage of title if that were the point. There is no testimony that "the intention was to sell at the price of lumber delivered in Laredo." What Jackson testified was that the price named in the order was the selling price fixed by O. P. A. for such lumber at Laredo. For aught that appears the ceiling price was the same at San Antonio and Kelly Field. There was no prayer to reform the contract. Major Allen, who acted for the United States in making the contract, was not even present at the trial to testify to his intention. On these pleadings neither could be heard to testify to his intention.

The written contract is perfectly plain to my mind. Exhibit 3 shows the General Conditions of Lumber Purchasing by the War Department, the fourth of which is: "Shipping Instructions: As given on purchase allocation. Shipments unless otherwise stated shall be made with freight collect. When made to the construction contractors or others they will pay the freight at destination and deduct the amount thereof from the face of the invoice." This is precisely what "freight collect" always means in commercial contracts, and what it means here. In this contract it is "otherwise stated" only in saying, "Freight collect from Laredo." This term of the contract of course means something. The meaning is that while the seller agrees to deliver the lumber f. o. b. Kelly Field (the destination alleged in the petition, which is near San Antonio), thereby agreeing, as everyone concedes, to bear the transportation charges from Central Mexico to Kelly Field, he is not to prepay them from Laredo, on the Mexican border where American railroads take over the shipment, but from Laredo to Kelly Field the shipments are to come "freight collect," the United States paying it and charging it against the price. This is exactly what was done on each of the thirty-two shipments from Sept. 3, 1943, to March 14, 1944, without any dissent or objection from the seller disclosed in this record. This practical construction by the parties

of this contract seems to me conclusive, if there was otherwise any doubt about it.

A purchase of goods "f. o. b. destination" means, as all agree, that the seller will pay the freight. If the freight is not prepaid, the purchaser will ordinarily pay it and deduct it from the purchase price if not already paid; but he is not bound to. If the contract reads "f. o. b. destination, freight collect," the two terms are not repugnant. They mean the freight will not be prepaid and the purchaser will advance it, but will charge it to the seller ultimately in settlement. This contract reading, "f. o. b. destination, freight collect from Laredo," plainly means that the purchaser will pay the freight from Laredo to destination, but will charge it back in settlement. This was done. We need not enquire why the United States couched its offer in these terms. The terms were accepted and carried out.

I think the judgment should be reversed.