THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* C. J. YOUNG, Plaintiff in Error.

*Opinion filed December 15, 1908.*

1. LOCAL OPTION—*Local Option act is penal and must receive strict construction.* The Local Option act is penal in character and must be strictly construed, although a construction so unreasonably strict as to defeat the true intent of the enactment should not be adopted.

2. SAME—*section 13 of Local Option act does not define or create an independent offense.* Section 13 of the Local Option act, prohibiting the giving away or delivery of intoxicating liquor or other shift or device to evade any provision of the act, does not define or create any independent offense but merely denounces shifts or devices to evade ·other provisions of the act, and its meaning can only be ascertained by an examination of such other provisions.

3. SAME—*the Local Option act does not purport to change legal meaning of word "delivery."* There is nothing in the Local Option act to indicate that the words "sell," "barter," "exchange" and "delivery" were used in any other than their ordinary sense, and the word "delivery" must be regarded as meaning a delivery having the same legal effect as a delivery by a person selling, bartering or exchanging to or with another, according to the legal significance of the term "delivery" as fixed by the law in existence when the act was passed.

4. SAME—*Local Option act does not purport to change the law relating to common carriers.* There is nothing in the Local Option act to indicate any purpose to alter the legal effect of any act of a common carrier or any purpose to change the law relative to the rights and duties of such a carrier.

5. SAME—*purpose of Local Option act is to prevent sales in dry territory.* The purpose of the Local Option act is to prevent the sale, barter and exchange of intoxicating liquor in dry territory, except under certain conditions, and not to prohibit a sale and delivery of liquor in wet territory, nor to prevent one who has become the owner of intoxicating liquor in wet territory from taking it into dry territory.

6. SAME—*what is not a violation of Local Option act.* Where an order for intoxicating liquor is received and accepted by a brewing company in wet territory, even though received and accepted by telephone, the place of making the contract of sale is in wet

territory, and the delivery of the liquor to an express company for shipment is, in legal effect, a delivery to the purchaser in wet territory, although the express company delivers actual possession of the liquor to the purchaser in dry territory. (*City of Carthage* v. *Duvall,* 202 Ill. 234, followed.)

WRIT OF ERROR to the Circuit Court of Vermilion county; the Hon. JAMES W. CRAIG, Judge, presiding.

On June 10, 1908, an indictment in four counts was returned by the grand jury of Vermilion county against C. J. Young, the plaintiff in error, charging him with having violated sections 12 and 13 of the Local Option law of 1907. (Laws of 1907, p. 302.) To the indictment plaintiff in error pleaded not guilty. A jury was waived, and on July 6, 1908, a trial was had in the Vermilion county circuit court, which resulted in a general finding of guilty against defendant. After overruling the motion of plaintiff in error for a new trial the court imposed a fine of $20 and costs, and ordered that he be imprisoned in the county jail for a period of ten days. To review that judgment a writ of error has been sued out of this court.

The People contended, and the court found, the facts to be as follows, to-wit: The township of Georgetown is anti-saloon or "dry" territory. The township of Danville is not anti-saloon territory and is denominated "wet" territory. Both townships are in Vermilion county. Young was a licensed saloon-keeper engaged in business in the city of Danville, in Danville township. The Terre Haute Brewing Company was engaged in the brewery business in the township last mentioned. Andres resided in the township of Georgetown. Some days prior to the finding of the indictment he was at Young's saloon, in Danville. He there had a conversation with a porter in the employ of Young, and made an arrangement with the porter so that if he wanted beer in Georgetown he could telephone the order to Young's saloon and those in charge of the saloon would order the beer from the brewery for Andres. Some days

later Andres, being then in Georgetown, called up Young's saloon by telephone and told the employee in the saloon who answered the telephone that he wanted one case and three kegs of beer sent to him at a point in Georgetown that evening by express. Young telephoned the order to the brewing company and it delivered the beer to an express company, a common carrier, in the township of Danville, consigned to Andres at a point in the township of Georgetown. The express company delivered the actual possession of the beer to Andres in the township of Georgetown on the same day. On the books of the brewing company the beer was charged to Andres and he paid the express charges when he received the beer in Georgetown.

Under the construction which was placed upon section 13, *supra,* by the court, and for which defendant in error now argues, the facts so stated constituted a violation of the statute. The position taken by plaintiff in error is, that if the construction of the statute adopted by the court be correct the statute is not valid; and further, that when the statute is properly construed, the facts as above stated do not constitute a violation thereof.

LINDLEY, PENWELL & LINDLEY, for plaintiff in error:

Where the locality of the making of a contract is material, as denoting the law by which it is to be construed and regulated, it is determined by the place of acceptance, whether it be oral, by mail or telegraph. 1 Beach on Contracts, sec. 66.

There is no difference in the rules governing the negotiation of contracts by correspondence through the post-office and by telegraph or telephone. 1 Beach on Contracts, secs. 63, 49.

A contract made by telephone is made in the county where the offer of one is accepted by the other,—where the party is when he accepts. *Bank* v. *Flour Co.* 141 Cal. 314; 2 Parsons on Contracts, 586.

Where an order for intoxicating liquors is taken in one county and sent to a wholesale dealer in another, the delivery by the wholesale dealer to the common carrier consummates the sale in the county where the order is accepted by such dealer at the point of shipment. *Finch* v. *Mansfield,* 97 Mass. 89; *Garbrecht* v. *Commonwealth,* 96 Pa. St. 449; Black on Intoxicating Liquors, secs. 433, 434; *Carthage* v. *Duvall,* 202 Ill. 237.

The title to intoxicating liquors shipped C. O. D. into dry territory from wet passes to the vendee upon delivery to the carrier, and in carrying the liquor into the dry territory the carrier is therefore acting for the vendee and is its agent, and not that of the vendor. *United States* v. *Express Co.* 119 Fed. Rep. 240.

The delivery of goods to a designated carrier is of the same legal effect, for the purpose of passing title, as a delivery to the purchaser himself. *Merchant* v. *Chapman,* 4 Allen, 362; *Johnson* v. *Stoddard,* 100 Mass. 306.

. W. H. STEAD, Attorney General, and J. W. KEESLAR, State's Attorney, (W. T. GUNN, of counsel,) for defendant in error:

Section 13 of the Local Option act merely operates to change the rule of evidence from the judicial construction that a sale takes place where the article is delivered to the common carrier, to that of holding that the place of sale is where the goods are actually delivered to the purchaser.

That section provides (*a*) the giving away or delivering of any intoxicating liquor for evading this act, or (*b*) the taking of orders or making of agreements within anti-saloon territory for the sale or delivery of intoxicating liquors, or (*c*) any other shift or device, shall be held an unlawful selling.

To prove a sale in anti-saloon territory it is necessary only to prove one of the following: (*a*) That liquor was delivered into anti-saloon territory; or (*b*) an agreement

was made in anti-saloon territory for the sale or delivery of such liquor; or (*c.*) that any other shift or device of a similar nature was used to avoid the act.

The legislature has general control over the rules of evidence and may change them at pleasure. *Ogden* v. *Saunders,* 12 Wheat. 213; *Webb* v. *Weatherhead,* 17 How. 576; *Herbert* v. *Easton,* 43 Ala. 537; *People* v. *Mortimer,* 46 Cal. 114; *State* v. *Cunningham,* 25 Conn. 195; *Commonwealth* v. *Curran,* 119 Mass. 206.

The rule that the place where the article is delivered to the carrier is the place of sale is merely a rule of judicial construction, which is made in the absence of legislation and unprotected by any constitutional provisions or legislative power to change it. *State* v. *Patterson,* 134 N. C. 612.

Mr. JUSTICE SCOTT delivered the opinion of the court:

Sections 12 and 13 of the Local Option act provide:

"Sec. 12.  Whoever shall by himself or another, either as principal, clerk or servant, directly or indirectly, sell, barter or exchange any intoxicating liquor in any quantity whatever within the limits of any political subdivision or district in this State, while the same is anti-saloon territory, shall be fined not less than twenty dollars ($20), nor more than one hundred dollars ($100), or imprisoned in the county jail for not less than ten (10) days nor more than thirty (30) days, or both, in the discretion of the court. If any person shall be convicted of violating any provision of this section and shall subsequently violate any provision of this section he shall upon conviction thereof, be fined not less than fifty dollars ($50), nor more than two hundred dollars ($200), and imprisoned in the county jail for not less than ten (10) days, nor more than thirty (30) days.  And in like manner, if he shall subsequently violate any provision of this section, for such third and each subsequent violation he shall upon conviction thereof be fined

not less than one hundred dollars ($100), nor more than two hundred dollars ($200), and imprisoned in the county jail for not less than thirty (30) days, nor more than ninety (90) days.

"Sec. 13.    The giving away or delivery of any intoxicating liquor for the pupose of evading any provision of this act, or the taking of orders or the making of agreements, at or within any political subdivision or district while the same is anti-saloon territory, for the sale or delivery of any intoxicating liquor; or other shift or device to evade any provision of this act, shall be held to be an unlawful selling."

The theory of the prosecution, in the first place, is, that the series of acts by which the beer passed into the possession of Andres was a violation of section 13, *supra,* in which Young participated, because the beer actually was given into the manual possession of Andres in dry territory. It is fundamental that the place of making this contract of sale was in the township of Danville, because the brewing company received and accepted the order of Andres in that township.    (1 Beach on Contracts, sec. 66; 2 Parsons on Contracts, 586.)    This is the case even though the order was received and accepted by telephone.    *Bank* v. *Sperry Flour Co.* 141 Cal. 314.

In *City of Carthage* v. *Duvall,* 202 Ill. 234, an action was brought by the city of Carthage against Duvall to recover a penalty for selling intoxicating liquors in violation of an ordinance which made it unlawful to sell intoxicating liquors in less than five gallon quantities in that city.    Skidmore, in Carthage, ordered one gallon of whiskey from a liquor dealer in Burlington, Iowa.    The latter filled the order by delivering the whiskey to an express company at Burlington, consigned to Skidmore at Carthage, C.O.D. When the whiskey reached Duvall, who was the agent of the express company at Carthage, he delivered it to Skidmore in that city and collected from him the price thereof,

with the express charges. This court held that this was not a sale in Carthage but was a sale in Burlington; that the liquor, when delivered to the carrier in Burlington, was, in legal effect, delivered to the purchaser in Burlington, and that the transaction was therefore not a violation of the ordinance of the city of Carthage. Under the law as stated in that case,—and that case, so far as here material, is, we think, in harmony with all the decisions on the subject,— the liquor involved in this case was sold and delivered to Andres in the town of Danville.

Defendant in error answers to this, that section 13, *supra,* changes the law in this respect so that the place of the delivery of the liquor is the place where it actually comes into the hands of the purchaser, and that the beer having been so received by Andres in Georgetown, the statute has been violated. Without entering at all into the question much discussed by counsel concerning the power of the legislature to change, by its enactment, the place at which the delivery is, in legal effect, made in a case such as this, it is sufficient to say that this law does not indicate any attempt on the part of the legislature to make such a change. It is to be observed that section 13 does not define or create an independent offense. It merely denounces shifts and devices made use of to evade other provisions of the act, and its meaning can only be ascertained by an examination of such other provisions. The local option statute is penal and must be strictly construed, although a construction so unreasonably strict as to defeat the true intent of the enactment should not be adopted. (*Hamer* v. *People,* 205 Ill. 570.) It is apparent from the various provisions of this law that its purpose was to prevent the sale, barter and exchange of intoxicating liquors in dry territory, except under certain conditions not necessary to be here pointed out. There is nothing in the language of the act to indicate that the words "sell," "barter," "exchange" and "delivery," used therein, were used in any other than their ordinary

sense. No word can be found in this statute indicating any purpose to alter the legal effect of any act of a common carrier or any purpose to change the law relative to the rights and duties of such a carrier. The word "delivery" must be regarded as pertaining to sell, barter or exchange, and as meaning a delivery having the same legal effect as a delivery by a person selling, bartering or exchanging to or with another, according to the significance of the term "delivery" as fixed by the law in existence at the time of the passage of the act. Giving it such meaning, the delivery contemplated was a delivery in dry territory by the person disposing of the liquor (by sale, barter or exchange,) to the person acquiring the same, or other delivery of like legal effect in dry territory, while under the law the delivery made in this case by the seller to the buyer was made in wet territory. So far as the question of delivery between the seller and purchaser is concerned, this case is exactly as though Andres, being in Danville township, had received the beer from the brewing company and had then himself hauled or carried it into Georgetown.

It is next suggested that if the law as to the place of delivery has not been changed by this statute Young has been guilty of practicing a shift or device, other than making a delivery which was in itself unlawful, to evade some provision of this act, and being so guilty is to be punished as for an unlawful selling. The act does not in any of its provisions attempt to prohibit a sale and delivery of liquor in wet territory, nor is there any attempt to prevent one who has become the owner of intoxicating liquor in wet territory from bringing that liquor into dry territory. Such transactions as the two last mentioned have none of the unlawful elements of a sale, barter or exchange of intoxicating liquor in dry territory. It is true that the transaction in this case enabled the purchaser to have the beer delivered to him in dry territory by a common carrier pursuant to a sale and shipment made by the brewer in wet

territory, and enabled him to own the beer and to have it in his immediate possession in dry territory; but these things the statute has not forbidden. We think there is no evidence of any attempt to evade any of the provisions of the act by the use of a shift or device of any kind.

Placing upon this enactment the meaning which we have above indicated it should bear, there is no ground upon which it can be concluded that Young is guilty of any offense charged by this indictment. We therefore refrain from a consideration of the questions which have been argued bearing upon the validity of section 13, *supra.*

The judgment of the circuit court will be reversed.

*Judgment reversed.*