### HOFFMAN v. GOSLINE et al.

(Circuit Court of Appeals, Sixth Circuit. July 7, 1909.)

No. 1,904.

1. SALES (§ 340*)—REMEDIES OF SELLER—ASSUMPSIT—REQUISITES—TITLE.

A seller cannot recover in assumpsit for goods sold and delivered unless title has passed.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 927; Dec. Dig. § 340.*]

2. SALES (§ 218½*)—CONTRACT—PASSING TITLE—"SHIPPED TO."

Defendant ordered plaintiffs to "ship to" defendant at a specified place and over a specific route 50 cars of coal of a certain grade and price f. o. b. mines, to be shipped during the first week in April, 1906. Held, that the words "shipped to" did not indicate an intention that defendant should control the coal in transit; and hence the fact that plaintiffs shipped the coal in their own name did not necessarily as a matter of law disclose an intent to retain title after delivery of the coal to the carrier.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 586, 587; Dec. Dig. § 218½.*]

3. SALES (§ 199*)—PASSING TITLE—INTENT.

The time of passing title to chattels sold depends on the intention of the parties.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 517; Dec. Dig. § 199.*]

4. SALES (§ 201*)—PASSING TITLE—"F. O. B." SHIPMENTS.

The ordinary effect of a purchase of coal at a specified price "f. o. b. mines" is that title shall pass on delivery of the coal to the carrier.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 535, 536; Dec. Dig. § 201.*]

5. SALES (§ 200*)—PASSING TITLE—CONDITIONS PRECEDENT—WEIGHING.

Where defendant requested plaintiffs to ship to defendant at a specified place 50 cars of coal of a specified kind at $2.25 f. o. b. mines during the

---

first week in April, 1906, shipping date guaranteed, and defendant accepted regardless of conditions, weighing the coal was not a condition precedent to the passing of title.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 525, 526; Dec. Dig. § 200.*]

**6.** SALES (§ 199*)—PASSING TITLE—INTENT.

Where no rights of creditors had intervened, and there was no question of the buyer's ability to pay for coal purchased and refused, it was the seller's right to rebut the presumption of intent to retain title by consigning the coal to the place of delivery in the name of the seller, instead of the buyer.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 517; Dec. Dig. § 199.*]

**7.** SALES (§ 218½*)—PASSING TITLE—QUESTION FOR JURY.

In an action for goods sold and delivered, but shipped by the seller in its own name, and not to the buyer as consignee, whether title passed was for the jury.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 586, 587; Dec. Dig. § 218½.*]

**8.** SALES (§ 218½*)—PASSING TITLE—QUESTIONS FOR JURY.

Where an action for goods sold depended on whether the title passed, the court's failure to submit to the jury the precise lines of inquiry into the facts from which they were to determine such issue was prejudicial error.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 586, 587; Dec. Dig. § 218½.*]

In Error to the Circuit Court of the United States for the Eastern District of Michigan.

This was an action in assumpsit upon the common counts. It was commenced in the Circuit Court of the United States for the Eastern District of Michigan, Southern Division, by plaintiffs below, partners under the firm name of Gosline & Co., of Toledo, Ohio, against Hoffman, defendant below, of Detroit, Mich. The action grew out of a contract, notice of which was given under the plea of the general issue. The cause was tried to the court and a jury, and resulted in a verdict in favor of the firm for $4,574.78. Judgment with interest thereon was entered, and in due course the cause was brought here upon proceedings in error.

The bill of particulars of the demand made and of the recovery sought was the "purchase price of fifty cars, containing 1,858.45 tons of Kanawha gas run of mine coal, at $2.25 per ton, f. o. b. mine, $4,181.51." The contract before alluded to was made through correspondence. On March 30, 1906, Hoffman telegraphed an order to Gosline & Co. in substance:

"Please ship to Jules G. Hoffman, at Junction Yards, Mich. Route, M. C. R. R. * * * 50 cars * * * Kanawha gas run-of-mine; * * * price $2.25, f. o. b. mines * * * to be shipped first week in April, 1906. Shipment at above date guaranteed." On March 31st Gosline & Co. accepted this order by letter, stating among other things: "Shipment next week. Mines have agreed to ship this regardless of conditions, and in selling it to you we understand you are to take the coal on the same basis." On April 2d Hoffman acknowledged receipt of this letter, and, after allusion to his order, closed with the words, "for shipment this week, regardless of conditions." It seems that at the time there was some prospect of a coal strike in the soft coal regions, though no strike occurred and the prices of coal declined. Gosline & Co. had on March 28th purchased 50 cars of the same grade of coal at $1.50 per ton f. o. b. mines from a company of Charleston, W. Va., which was operating coal mines at Paint Creek on the Chesapeake & Ohio Railroad, in that state. Gosline & Co. undertook to fill the Hoffman order from that source. As the coal was loaded on the cars at the mines, card bills, as they

were called, were made out by representatives of the coal operating company, showing the numbers of the cars, consignor, consignee, route, and destination. The cards were then deposited by the operating company at an agreed place, from which they were taken by the railroad conductors when the loaded cars were removed by the railroad company. The loaded cars were automatically weighed as they passed over the scales at Paint Creek Junction, and were thence transported to their destination. These card bills were taken up at the weighing station and waybills were made and substituted, with the addition, however, of the weights of the coal. No bills of lading were issued, and the waybills were, as was usual, given only to the conductors who were in charge of the trains, as means of identifying and directing the cars to their destination. Gosline & Co. kept trace of the cars through their numbers, which were furnished them both by an agent they had at the mines, and by the railroad agents. The card bills and waybills representing the coal in question contained the name of Gosline & Co., by their direction, both as consignors and consignees, destination and route in each instance being Junction Yards, Mich., via Michigan Central Railroad.

Evidence was offered tending to show that 50 cars were loaded at the mines with coal of the required grade and quality, billed in the manner mentioned, and turned over to the railroad company within the first seven days of April, 1906; that Gosline & Co. notified Hoffman of the shipments of the coal as often as made, giving numbers of cars and destination, Junction Yards, and at the same time notified the proper railroad agents that the coal belonged to Hoffman and to deliver same to him; that the railroad agent at Junction Yards, upon arrival of cars, seasonably notified Hoffman, who declined to receive the coal. The evidence tended to show that 23 of the cars were loaded and delivered to the railroad on or before April 6th, and the remainder on April 7th; also, that seven of the cars were weighed and their transportation commenced prior to the 7th, and the remainder upon the 7th, and at various dates thereafter until the 15th. In the forenoon of April 7th Hoffman sent a telegram to Gosline & Co. stating: "I hereby cancel my order. * * * You will have to divert." Gosline & Co. communicated with Hoffman both by telephone and telegraph, the telegram reading: "Every car in your order * * * is either en route or will go forward to-day. This is per agreement. We cannot cancel." Hoffman wired in return at 11:57 a. m.: "Your telegram order is absolutely canceled; will not accept coal." At 3:14 p. m., Hoffman wired again: "My order was canceled and you ship coal at your own risk." Gosline & Co. confirmed their course by letter of April 7th, which Hoffman answered on the 9th, alluding to telephone conversation and confirming his telegrams. The 50 car loads of coal were subsequently sold by the railroad company for demurrage. Each of the parties to the action disclaimed any interest in the coal, and refused to have anything to do with it.

J. B. Murfin, for plaintiff in error.
H. C. Bulkley, for defendants in error.

Before LURTON, SEVERENS, and WARRINGTON, Circuit Judges.

WARRINGTON, Circuit Judge (after stating the facts as above). The assignments of error are numerous, but need not be noticed in detail. Each side presented charges, requesting among other things a directed verdict. The leading issue presented by the record and by counsel is whether title to the coal passed to Hoffman. It is conceded by both sides, as under settled law it must be, that in an action like this—declaration on the common counts—recovery was not permissible unless title had passed.

It is claimed on behalf of plaintiff in error that title did not pass for several reasons: In the first place, that the contract in terms re-

quired the coal to be consigned to Hoffman by name. In the next place, that consignment of the coal to Gosline & Co. disclosed a purpose in them to retain title, and so be able, as was customary under conditions like those threatened, to divert the coal to others at higher prices. And, finally, that Hoffman's refusal to receive the coal prevented transmission of title, and consequently recovery in an action like this. It is maintained on behalf of defendants in error that consignment to Gosline & Co., with intent to transfer title to Hoffman, giving notice to that effect to him and the carrier, was consistent with the contract, and that they anticipated and met the other claims by evidence (1) explaining that the sole object of so consigning the coal was to avoid revealing the name of their customer to the mine operators, and that it was customary so to do, as Hoffman well knew; and (2), if we understand it, showing that the coal had been delivered to the railroad company at the mines when notice of Hoffman's effort to cancel the contract was received.

We are not persuaded that the contract required consignments to be made only in the name of Hoffman. Of course, consignments made in his name would have been in harmony with the contract. But did the language so restrict consignments? As it seems to us, the words "ship to Jules G. Hoffman, at Junction Yards, Mich. Route M. C. R. R.," meant that the coal should be placed in Hoffman's actual possession at Junction Yards, rather than that it should be placed at his disposal in transit. Expressly naming destination necessarily meant dominion of the coal in Hoffman at that place; but mentioning only a portion of the route, and omitting any point of origin or any route leading thence to the Michigan Central Railroad excluded demand for control in transit, and left the consignment open to any explanation which was consistent with transfer of title at the mines. If control in transit and possession at destination were intended to be made alike material, surely that intent should have been distinctly expressed. The words "ship to" a person named, "at" a specified place, are hardly calculated to reveal a purpose to control in transit, so much as an order for delivery of the thing at the place named. Indeed, it is hard to see why it would not have been a compliance with the language we are considering, if Gosline & Co. at the time of receiving and accepting the order of Hoffman had been in control at Junction Yards of 50 cars of coal of the kind required, and had tendered the same to Hoffman.

We therefore think any construction of the contract which would restrict consignment exclusively in the name of Hoffman would attach unusual rigor to the meaning of the words "ship to," and would also bring them into conflict with the usual effect accorded to the intention of the parties where passing of title is in question. In Harrison v. Fortlage, 161 U. S. 57, 63, 16 Sup. Ct. 488, 490, 40 L. Ed. 616, it was held that a contract "to ship by a certain vessel for a particular voyage" did not necessarily mean that the goods must be carried in that vessel throughout the voyage. See, also, Fisher and Another v. Minot, 10 Gray (Mass.) 260, 262; Mora y Ledon v. Havemeyer, 121 N. Y. 179, 186, 24 N. E. 297, 8 L. R. A. 245; Clark v. Lindsay, 19 Mont. 1, 4, 47 Pac. 102, 61 Am. St. Rep. 479.

The foregoing views are strengthened, we think, by the law applicable to consignments made by consignors to themselves instead of their vendees. Nothing perhaps is better settled than that the intention of the parties must be given controlling effect in issues concerning the passing of title to chattel property. It is not open to serious dispute that the contract under review discloses a common intent in the parties to transfer title to the coal, when placed upon the cars and delivered into the custody of the carrier. This is but the ordinary effect to be given to "f. o. b. mines." If the consignments had been made in the name of the vendee, there could have been no question so far as this contract is concerned as to passing title to all coal loaded on cars and seasonably delivered into the custody of the carrier at the mines. In that event the appropriation of the coal to the buyer would have been complete; for in our view the contract did not make weighing a condition precedent to the passing of title. Now, since no rights of creditors had intervened, and no question of vendee's ability to pay had been made, it was open to the vendor, by pertinent facts and circumstances, to rebut the presumption of intent to retain title by consigning the coal in the firm name. Dows v. National Exchange Bank, 91 U. S. 618, 633, 634, 23 L. Ed. 214; Joyce v. Swann, 17 C. B. (N. S.) 83; Browne v. Hare, 4 H. & N. 821, 828; Gibbons v. Robinson, 63 Mich. 146, 150, 154, 29 N. W. 533; Emery's Sons v. Irving National Bank, 25 Ohio St. 360, 18 Am. Rep. 299; Straus v. Wessel, 30 Ohio St. 211; Merchants' National Bank v. Bangs, 102 Mass. 291; Hobart v. Littlefield, 13 R. I. 341; Neimeyer Lumber Co. v. Burlington & M. R. R. Co., 54 Neb. 321, 74 N. W. 670, 40 L. R. A. 534; McKay & Co. v. McKenna, 173 Pa. 581, 34 Atl. 236.

This reduces the case to an issue of fact. Under our view of the evidence, this issue was one for the jury. It follows that the requests made on behalf of the parties respectively for charges directing a verdict were properly overruled. But we are constrained to think, with deference, that the general charge failed to submit to the jury the precise lines of inquiry into the facts which they were to determine. We think that this amounted to prejudicial error, and that the case should be retried under appropriate instructions concerning the passing of title. The judgment is accordingly reversed, and a new trial awarded.