## In re GLOBE VARNISH CO.

### NUDELMAN v. GLOBE VARNISH CO.
No. 7082.

Circuit Court of Appeals, Seventh Circuit.
July 23, 1940.

Rehearing Denied Oct. 1, 1940.

John E. Cassidy, Atty. Gen. of Illinois, Montgomery S. Winning, Asst. Atty. Gen., and Mortimer Porges, Eli J. Bibo, and Philip J. Simon, Asst. Attys. Gen. of Illinois, for appellant.

Marcus J. Golden, Wm. P. Sidley, Wm. H. Avery, Jr., Russell Whitman, and Thurlow G. Essington, all of Chicago, Ill., (Hamilton K. Beebe, Claude H. Coon, and J. Edward Day, all of Chicago, Ill., of counsel), for appellee.

Before SPARKS and MAJOR, Circuit Judges, and LINDLEY, District Judge.

SPARKS, Circuit Judge.

The Globe Varnish Company is in reorganization proceedings under section 77B of the Bankruptcy Act, 11 U.S.C.A. § 207. Appellant, the Director of Finance of Illinois, filed a claim in the sum of $1,594.87 for taxes alleged to be due under the Illinois Retailers' Occupation Act. 1937 Illinois Revised Statutes, chapter 120, § 440 et seq., pertinent parts of which we set forth in the margin. [1]

The debtor filed objections to the claim. It was referred to the referee as special master, and after a hearing he allowed the claim in full and so reported. Upon hearing before the District Court it disallowed a portion of the claim in the sum of $560.57, holding that that amount represented taxes on sales in interstate commerce. From that order this appeal is prosecuted.

The facts are not disputed. The debtor was engaged in selling tangible personal property for use or consumption. It is an Illinois corporation with its main place of business in Chicago. The railroad companies to whom the sales in question were made had offices and freight stations in that city. The transactions of sale were all similar, and Exhibit 1, which is an order for paint, is typical. That exhibit was a written order placed by the Chicago, Milwaukee, St. Paul and Pacific Railroad Company (hereafter referred to as the Railroad) with the debtor for nine drums black locomotive finishing paint, in 55 gallon, one-time containers, at $1.10 per gallon, f. o. b. Chicago. The order requested the debtor to ship the order to the Railroad, care of storekeeper (consignee) 1029-183, (Destination) Milwaukee Shops, Wisconsin, via the Railroad, junction nearest point of shipment, unless otherwise specified. The routing instructions contained the following: "Deliver to C. M. St. P. & P. R. R. Freight Station." The order further stated that the receipted bill of lading must accompany the invoice and be sent to the purchasing agent, and that the seller should strictly comply with all instructions and specifications.

The debtor complied with the order in all respects and delivered the paint properly consigned to the consignee at Milwaukee, to the freight station of the railroad named, together with a standard form of bill of lading prescribed by the Interstate Commerce Commission. It was receipted by the freight agent, and a copy given to the debtor and the shipment was handled precisely as it would have been handled had the consignee been a purchaser other than the Railroad, that is to say, a way bill was issued in accordance with the bill of lading, the paint was placed in the car and transported directly to the destination

---

[1] § 440, par. 1. " 'Sale at retail' means any transfer of the ownership of, or title to, tangible personal property to the purchaser, for use or consumption and not for resale in any form as tangible personal property, for a valuable consideration. Transactions whereby the possession of the property is transferred but the seller retains the title as security for payment of the selling price shall be deemed to be sales."

§ 441. "A tax is imposed upon persons engaged in the business of selling tangible personal property at retail in this State at the rate of two per cent (2%) of the gross receipts from such sales in this State of tangible personal property made in the course of such business upon and after the taking effect of this Act and prior to July 1, 1935, and at the rate of three per cent (3%) of the gross receipts from such sales on and after July 1, 1935 * * *. However, such tax is not imposed upon the privilege of engaging in any business in interstate commerce * * *."

at Milwaukee, Wisconsin. This method of sale and delivery had been pursued by the parties in precisely the same manner for twenty-four years.

We agree with appellant that state taxes which may indirectly burden interstate commerce have been upheld. Nashville C. & St. L. Ry. v. Wallace, 288 U.S. 249, 53 S.Ct. 345, 77 L.Ed. 730, 87 A.L.R. 1191, and analogous cases. It also has been held that where a carrier purchases supplies for its subsequent use in interstate commerce, neither the purchase nor the storage is exempted from a non-discriminatory state tax, because the interim between the delivery and the subsequent shipment by the purchaser in interstate commerce gives the property a taxable situs in the state where stored. Edelman v. Boeing Air Transport Co., 289 U.S. 249, 53 S.Ct. 591, 77 L.Ed. 1155. See also McGoldrick v. Berwind-White Co., 309 U.S. 33, 60 S.Ct. 388, 84 L.Ed. 565, and cases there cited. In other words, during the interim of rest, the stream of interstate commerce had ceased, or had not begun. In the McGoldrick case, it was also held that, although the purchase was a transaction in interstate commerce, the tax was a valid exercise of state power, because it was laid alike upon interstate and intrastate sales, and there was no discrimination.

▮ Was the transaction in interstate commerce? We think it was, just as clearly, if not more so, than in the case of Gwin, White & Prince, Inc. v. Henneford, 305 U.S. 434, 59 S.Ct. 325, 83 L.Ed. 272. The facts are stipulated that the paint was purchased in Illinois, under instructions from the buyer for the seller to consign it to Milwaukee, Wisconsin, deliver it to a freight station of a specified railroad in Chicago, secure a receipted bill of lading, and deliver the receipted bill to the buyer's purchasing agent. These instructions were fully complied with, and the transportation was continuous from the time the paint left the seller's place of business until it reached its destination in Milwaukee.

Appellant contends or rather intimates, that the transportation in interstate commerce did not begin, if at all, until the property was delivered by the seller to the freight agent at Chicago. If this principle is adopted, the seller in the business described in the statute, and those similarly situated, could never engage in inter-

state commerce, and the exception in the statute is a useless provision. We think there is no merit in this contention.

Appellant further contends that in as much as title had passed to the Railroad in Illinois, subsequent transportation thereof outside the State by the Railroad was not in interstate commerce.

▮ It is quite true, as a general rule, that title to property passes to a vendee when it is delivered by a vendor to a carrier f. o. b. The rule applies, however, only where there is an absence of a different intention, for it has always been recognized, by courts and legislatures, that where there is a contract to sell specific or ascertained goods, the property in them is transferred to the buyer at such time as the parties to the contract intend it to be transferred. United States v. Hecht, 2 Cir., 11 F.2d 128. In the instant case, we think it makes no difference when the title passed, and we are unable to perceive how that fact, whenever it occurred, could be determinative of the character of the sale, as to whether it was an interstate or intrastate transaction. The fact that the buyer at the time of the purchase might pay the shipping charges to the seller, or might direct the seller to ship it f. o. b. at place of shipment would not, it seems to us, alter the character of the transaction in the least. Under such circumstances the title would pass precisely the same as it did in the instant case, and to no greater extent. In each case there was and would be a lack of delivery of possession.

It is contended, however, by appellant that there was a delivery of possession to the buyer at the freight station in Illinois, and that at all times thereafter the buyer had complete possession, domination and control of the property. This we think is an erroneous conclusion, arising from the fact that the buyer in this case was also the public carrier, and of course, was acting in a dual capacity. The decisions which we have hereinbefore cited recognize this dual capacity, and, in the absence of fraud, approve of its application. It is no longer debatable that a public carrier in carrying its own property is governed by the same rules which control the transportation of other property except as to charges.

Hence, the delivery of this property at the freight station in Chicago was not made to the buyer, but to the carrier. The

buyer had no possession of it or right to possession of it, until it arrived at Milwaukee. That this was the clear intention of the parties can not be doubted. They thought they were engaged in an interstate transaction which was not subject to the Occupation Tax of Illinois. They knew that if the paint were sold and delivered to the buyer in Illinois, and stored or held by it for any length of time in Illinois for its future use beyond state lines, the occupational tax of Illinois would be collectible, because under such circumstances the stream of interstate commerce would not yet have started. Under such circumstances the railroad might have been liable for many different taxes, discussed in the various decisions, upon this property held in storage or otherwise. It is not a fair statement of the record to say that both parties knew that the railroad intended, after receiving the purchased wares, to transport them to points outside the state. The most that can be said is that both parties intended that the seller should consign the paint to Milwaukee via the buyer's railroad. The record discloses the reasons for this intention to be: (1) Not a drop of the paint was to be used in Illinois, it was all to be used in Milwaukee; (2) it was desired to avoid any delivery of possession to the buyer in Illinois, thus avoiding a reshipment or a reconsignment by the buyer, which might brand the transaction as an intrastate one and rightfully subject the seller to the Illinois Occupation Tax.

The considerations for the agreement to carry out these intentions were obvious and are in the record. If it was an intrastate transaction, the tax was due from the seller, and it was authorized to pass it on to the buyer and would have done so. Hence when the buyer ordered the paint to be consigned and shipped to Milwaukee, the only place where it was needed or could be used by the buyer, the latter was relieved from paying the tax, upon the condition that possession of the property would be withheld from the buyer until it reached Milwaukee. It is not claimed that fraud or bad faith permeated any part of this transaction, although it was intimated in argument that the transaction and its results were preconceived, and planned by the parties. To do so would not be unlawful, for every voluntary act is the product of a thought. However, such planning, if any may be inferred, certainly occurred long before the enactment of the Illinois Act, for this transaction was merely a repetition of what these same parties had been doing for a quarter of a century.

Moreover, complete title presupposes free use, control and possession by the owner or his agent, hence the Railroad's title to this property was not untrammeled as between it and the seller until the delivery was made in Milwaukee. Its obligation to deliver according to the consignment was as binding on it as it would have been on any other carrier, and the seller as against the buyer had a right to rely upon its strict performance, for it was this that was determinative of its right to exemption from the tax. If the obligation had been violated by the Railroad, and the paint had remained in Illinois, the seller's remedy perhaps would not have been by way of defense to the State's claim, but by action against the Railroad, for the violation of its contract. That phase of the case, however, is moot, for delivery was made according to the consignment. It is mentioned only as bearing upon the Railroad's right of complete use, control and possession of the property before delivery at Milwaukee, which we think it did not have.

It is further contended by appellant that state taxation directly placed on interstate commerce is not of itself invalid, unless it is capable of being imposed by every state through which the shipment passes. This may be true. However, as Wisconsin has the right to levy a compensating use tax on property such as here involved, Illinois, aside from the exemption, cannot validly levy a privilege tax measured by the proceeds of the sale, as this would result in two taxes upon an interstate sale, while a local sale would be subject to only one. See Southern Pacific Co. v. Gallagher, 306 U.S. 167, 59 S.Ct. 389, 83 L.Ed. 586; J. D Adams Mfg. Co. v. Storen, 304 U.S. 307, 58 S.Ct. 913, 82 L.Ed. 1365, 117 A.L.R. 429; Western Live Stock v. Bureau of Revenue, infra. See also McGoldrick v. Berwind-White Co., supra.

Appellant further contends that where a carrier transports its own materials or property across state lines for its own use, it is not interstate commerce. We think the contrary is true under the facts here presented. See Pipe Line Cases (United States v. Ohio Oil Co.), 234 U.S. 548, 34

S.Ct. 956, 58 L.Ed. 1459; Valvoline Oil Co. v. United States, 308 U.S. 141, 60 S.Ct. 160, 84 L.Ed. 151. See also Wood Preserving Corp. v. Dep't of Treasury, 7 Cir., 114 F.2d 922, decided by us this term.

It is further contended by appellant that the carrying of goods in carts, trucks or other vehicles to the depot where the journey is to commence is not part of interstate commerce. It relies on Coe v. Town of Errol, 116 U.S. 517, 6 S.Ct. 475, 29 L.Ed. 715, and analogous cases. In those cases the seller made no consignment beyond state lines. The goods were delivered to the buyer and held in possession by it for its future use if, when, and where it might require. It is clear that those facts are not analogous to those here.

Decree affirmed.

LINDLEY, District Judge (dissenting).

I am of the opinion that the taxes were legally assessed. The debtor, engaged in selling merchandise in Illinois, with its chief place of business in the City of Chicago, from time to time, sold within Illinois to the Chicago, Milwaukee, St. Paul & Pacific Railroad Company, having offices and freight stations in Chicago, certain manufactured materials, each order emanating from an Illinois office of the railroad company. In each instance the railroad company delivered to the debtor an order for merchandise to be delivered f. o. b. Chicago, at the local freight station of the railroad, consigned to one of the latter's out of state shops. The debtor, accepting the orders, delivered the materials to the freight station in Chicago and received bills of lading acknowledging receipt of the material for shipment outside of the state. The railroad then transported the merchandise to its out of state office to which it was consigned. An employee of the railroad company testified, "we carry our material to our shops at Milwaukee."

The Illinois Retailers Tax Act imposes a privilege tax upon persons engaged in the selling of tangible personal property for use and consumption, the amount of the tax being determined by the volume of sales. The act expressly provides that it shall not apply to the privilege of engaging in business in interstate commerce. Chapter 120, Illinois Revised Statutes 1937, §§ 441, 441a; Reif v. Barrett, 355 Ill. 104, 188 N.E. 889.

Upon delivery of merchandise by a seller to a common carrier for transportation, pursuant to contract of sale, title passes to the purchaser. City of Carthage v. Duvall, 202 Ill. 234, 66 N.E. 1099; Golo Slipper Co. v. Hamilton Shoe Stores Co., 10 Cir., 43 F.2d 33, 34; United States v. Hecht, 2 Cir., 11 F.2d 128, 135; In re Arctic Stores, D.C., 258 F. 688, 690. Under a contract of sale, f.o.b. a certain point, title passes to the buyer at the time of delivery to the carrier at that point. Price v. Neiman Bros. Co., 240 Ill.App. 157, 162; Nelson Bros. v. Perryman-Burns, 2 Cir., 48 F.2d 99, 100; Higgins v. California Prune Growers, 2 Cir., 16 F.2d 190, 192; Hoffman v. Gosline, 6 Cir., 172 F. 113, 117. When this vendor delivered the merchandise to the carrier in Chicago, receiving bills of lading acknowledging receipt of the merchandise, under contracts of sale providing for delivery f.o.b. Chicago title passed to the purchaser. Performance of the contract of sale was completed in Illinois, People v. Young, 237 Ill. 196 at 201, 86 N.E. 589. The seller parted with its title there; the purchaser acquired title there. Thereafter the property was that of the vendee, and the seller had no interest therein. The property was from that time thence-forth under the domain and control of the buyer, who alone was endowed with the right to recover for damage thereto in transit, Pacific Exp. Co. v. Spaulding & Co., 199 Ill.App. 474. The sales were completed in Illinois, title passed in Illinois, and the taxes assessed in no wise conflict with, infringe upon or cast a burden upon interstate commerce.

It may well be that these well-known principles of law as to the passing of title do not apply if it appears that the parties intended differently; but the record is silent as to any such intention. It discloses merely that it was known to both parties that the railroad intended, after receiving the purchased wares, to transport them to points outside the state. And it appears further that the railroad considered itself the owner of the merchandise after delivery in Chicago, for the testimony was that it transported its own materials to points outside the state.

True, when a commodity has begun to move as an article of trade from one state to another, commerce in that commodity between the states has commenced. But the carrying of goods in carts, trucks or other vehicles to the depot where the journey is to commence is no part of such commerce. Coe v. Town of Errol, 116 U.

S. 517, 6 S.Ct. 475, 29 L.Ed. 715. The intent to forward the property, after being received, to another state does not exempt it from taxation. Bacon v. Illinois, 227 U.S. 504, 33 S.Ct. 299, 57 L.Ed. 615; Minnesota v. Blasius, 290 U.S. 1, 54 S.Ct. 34, 78 L.Ed. 131. The goods "were delivered to the so-called consignee before they started, and were in its hands throughout," to do with as it liked. Superior Oil Company v. Mississippi, 280 U.S. 390, 50 S.Ct. 169, 170, 74 L.Ed. 504. The purchase and supply of equipment for uses which constitute interstate commerce is not so identified with that commerce as to make the sale immune from a tax imposed by the state. Eastern Air Transport, Inc. v. South Carolina Tax Commission, 285 U.S. 147, 52 S.Ct. 340, 76 L.Ed. 673. In Edelman v. Boeing Air Trans., Inc., 289 U.S. 249, 53 S.Ct. 591, 77 L.Ed. 1155, the court said that a state may validly tax the "use" to which gasoline is put in withdrawing it from storage within the state and placing it within the tanks of planes, notwithstanding its ultimate function is to generate motive power for carrying on interstate commerce. Of similar import is Nashville, C. & St. L. R. Co. v. Wallace, 288 U.S. 249, 53 S.Ct. 345, 77 L.Ed. 730, 87 A.L.R. 1191.

The bare fact that one intends to transport in interstate commerce material purchased does not relieve him from non-discriminatory state taxation which adds to the cost of his business. And taxation measured by gross receipts from interstate commerce has been sustained when fairly apportioned to the commerce carriers within the taxing state. In still other cases, taxation has been rejected only because the apportionment was found to be inadequate or unfair. Western Live Stock v. Bureau of Revenue, 303 U.S. 250, 58 S.Ct. 546, 82 L.Ed. 823, 115 A.L.R. 944. Here the taxation produces no direct burden on commerce but only the same incidental and indirect effect which results from the payment of property taxes or of like taxes by residents of Illinois; it cannot amount to a regulation of interstate commerce. American Mfg. Co. v. St. Louis, 250 U.S. 459, 39 S.Ct. 522, 63 L.Ed. 1084. In Graybar Electric Co., Inc. v. Curry, 238 Ala. 116, 189 So. 186, 190, affirmed. 308 U.S. 513, 60 S.Ct. 139, 84 L.Ed. 437, where a company had entered into a contract of sale requiring that certain merchandise be shipped in interstate commerce, and the question was whether such transaction was exempted from the state sales tax on the ground that it constituted a burden upon interstate commerce, the court said:

" * * * It was no benefit to the purchasers that the goods were to be shipped 'in interstate movement' for the reason that the price of the goods would be the same, whether shipped 'in interstate movement' or not. Evidently this provision as to 'interstate movement' was to preclude, if possible, the imposition of a sales tax on the goods in Alabama. The transactions were Alabama sales within the provision of the Alabama Sales Tax Law. The form or language of the customers' orders cannot affect the case.

"It is not 'within the power of the parties by the form of their contract to convert what was exclusively a local business, subject to state control, into an interstate commerce business, protected by the commerce clause.' "

In McGoldrick, Comptroller of the City of New York v. Berwind-White Coal Mining Co., 309 U.S. 33, 60 S.Ct. 388, 395, 84 L.Ed. 565, a seller, with sales offices in New York, contracted there to sell and deliver in that city, coal produced at its mines in Pennsylvania and shipped to New York for delivery. The city imposed a tax upon the purchases, measured by the sales price under a statute so providing. The Supreme Court held that such tax did not infringe the commerce clause of the constitution; that it was assessed upon transfer of title, consummated wholly within the state. The court could find no adequate ground for holding that the tax was a regulation which, in the absence of Congressional action, the commerce clause forbids. Mr. Justice Stone writing the opinion, used this language: " * * * the extension of the immunity of the commerce clause contended for would be at the expense of state taxing power by withholding from taxation property and transactions within the state without the gain of any needed protection to interstate commerce. * * * we have sustained the tax where the course of business and the agreement for sale plainly contemplated the shipment interstate in fulfilment of the contract. Wiloil Corporation v. Pennsylvania, supra, 294 U.S. [169] page 173, 55 S.Ct. [358] page 359, 79 L.Ed. 838; Graybar Electric Co. v. Curry, supra. * * * Taxation of property or the exercise of a power over it immediately preceding its previously contemplated shipment interstate

has been similarly sustained. Coe v. Town of Errol [supra]; Bacon v. Illinois, supra; Federal Compress & Warehouse Co. v. McLean, 291 U.S. 17, 54 S.Ct. 267, 78 L.Ed. 622. For reasons already indicated all such taxes upon property or the exercise of the powers of ownership stand in no different relation to interstate commerce and have no different effect upon it than has the present sales tax upon goods whose shipment interstate into the taxing state was contemplated when the contract was entered into."

It is not a question of whether Congress might rightfully intervene with regulatory legislation. Nor are we concerned with the question of how far the Congress might legitimately go in legislation affecting the validity of the state tax, for it has not seen fit to take any action in that respect. In view of the statements by Mr. Justice Stone in the case last cited, in the absence of Congressional action, I feel that the court is not justified in concluding that the tax unlawfully burdens interstate commerce.

For these reasons, I believe the judgment should be reversed.