## VALVOLINE OIL CO. *v.* UNITED STATES ET AL.

No. 25. Argued October 19, 1939.—Decided November 13, 1939.

*Mr. J. Campbell Brandon,* with whom *Mr. Harry S. Elkins* was on the brief, for appellant.

*Mr. Hugh B. Cox,* with whom *Solicitor General Jackson, Assistant Attorney General Arnold,* and *Messrs. Elmer B. Collins, Frank Coleman, Richard H. Demuth,* and *Daniel W. Knowlton* were on the brief, for appellees.

MR. JUSTICE REED delivered the opinion of the Court.

The Valvoline Oil Company appeals[1] from the final decree of a three-judge district court for the Western District of Pennsylvania, under the Urgent Deficiencies Act,[2] dismissing a petition to enjoin and annul an order of the Interstate Commerce Commission. The order, requiring appellant to file with the Commission certain maps, charts and schedules of its pipe-line properties for use in valuing the properties under § 19a of the Interstate

---

[1] Judicial Code § 238, 28 U. S. C. § 345.
[2] 38 Stat. 220, 28 U. S. C. §§ 47, 47a.

Commerce Act, was made after a determination by the Commission that appellant was "engaged in the transportation of oil by pipe line in interstate commerce and that it is a common carrier subject to the provisions of the Interstate Commerce Act."

Through 1,426 miles of pipe line, running to 9,020 wells in Pennsylvania, West. Virginia and Ohio, Valvoline gathers some 75,000 barrels of oil per month for its two refineries in Pennsylvania which manufacture the products distributed by Valvoline to the trade. All of this oil is purchased from producers at the well, 50 per cent originating in Pennsylvania, 38 per cent in West Virginia, and 12 per cent in Ohio. At the time of the final order of the Commission which it challenges here, Valvoline was selling surplus oil, not needed in its own operations, to a refinery in Pennsylvania and to another in West Virginia, but none of this came from out of the state of the refinery. Because, thus, it does not transport interstate other·oil than that which it purchases at the well for its own use, Valvoline claims that it is not a common carrier of oil subject to the Interstate Commerce Act, or, should it be held to come within the terms of the statute, that the statute is unconstitutional as to it in that the provisions violate due process by taking the carrier's property for public use without compensation.

Appellant urges as reasons why it is not a common carrier within the provisions of the Interstate Commerce Act that its pipe lines are used primarily to transport oil to its own refineries, that it is not clothed with a public interest, that the oil flowing through its lines is not in commerce until after preparation for market, and that, since the purpose of § 19a(a) and (e) of the Interstate Commerce Act ·in requiring valuation data is to furnish a basis for the establishment of traffic and rates, the report required is the first step in general regulation to

which it is not subject. The pertinent provisions of the Act are set out in the margin.[3]

There is no controversy over whether appellant is an interstate pipe line company. Obviously it is. The contentions above are advanced to show it is not subject to the Act. Section 1(3) defines common carrier to include "all pipe-line companies." If this definition is not limited by the subsequent clause "engaged . . . as common carriers for hire," extended consideration of these characteristics of a private carrier is unnecessary as the language of the definition is decisive.

The practice of compelling producers to sell at the well before admitting their oil to the lines was widely used as . a means of monopolizing the product before the Hepburn Amendment in 1906.[4] Whether the oil so owned

---

[3] Sec. 1. (1) The provisions of this chapter shall apply to common carriers engaged in—

.          .          .          .          .

(b) The transportation of oil or other commodity, except water and except natural or artificial gas, by pipe line, or partly by pipe line and partly by railroad or by water—
From one State . . . to any other State. . . .
(3) The term "common carrier" as used in this chapter shall include all pipe-line companies; express companies; sleeping-car companies; and all persons, natural or artificial, engaged in such transportation [or transmission] as aforesaid as common carriers for hire.

.          .          .          .          .

Sec. 19a. (a) The Commission shall, as hereinafter provided, investigate, ascertain, and report the value of all the property owned or used by every common carrier subject to the provisions of this chapter. . . .

(e) Every common carrier subject to the provisions of this chapter shall furnish to the Commission or its agents from time to time as the Commission may require maps, profiles, contracts, reports of engineers, and any other documents, records, and papers, or copies of any or all of the same, in aid of such investigation and determination of the value of the property of said common carrier. . . .

[4] 34 Stat. 584; see 40 Cong. Rec. 6365–66; *Pipe Line Cases*, 234 U. S. 548, 559.

and transported was ultimately used by the carrier in its own operations or sold to others was in this connection immaterial. Certainly one would find a public interest in the sole means of transporting this commodity from thousands of wells for thousands of producers. This was covered by the *Pipe Line* decision. There it was stated that commerce is not dependent on title, "and the fact that the oils transported belonged to the owner of the pipe line is not conclusive against the transportation being such commerce." The applicable section of the Interstate Commerce Act at the time of the *Pipe Line Cases* read:

That the provisions of this Act shall apply to any person or persons engaged in the transportation of oil or other commodity, except water and except natural or artificial gas, by means of pipe lines, or partly by pipe lines and partly by water, who shall be considered and held to be common carriers within the meaning and purpose of this Act.

This Court construed that section to cover those who were common carriers in substance even if not in technical form and read it that those "engaged in the transportation of oil . . . by means of pipe lines" shall be treated as common carriers under the Act. The last clause was held not "to cut down the generality" of the Act.

In the present Act there is a change of language but we perceive none in meaning. Speaking of the amendments of the Transportation Act of 1920, which recast the Hepburn Amendment into the present form, the House Committee on Interstate and Foreign Commerce reported that the section here under consideration "amends the first five paragraphs of section 1 of the Commerce Act, making minor corrections and classifying language in several respects, but making no important changes in policy." [5] As now written the section brings railroads

---

[5] Rep. No. 456, Nov. 10, 1919, to accompany H. R. 10453, 66th Cong., 1st Sess.

under the Act by means of the last clause of subsection (3) only.[6] This clause is a conjunctive, not a modifier. It does not affect the generality of the first clause as to pipe-line companies.

The appellant relies upon the *Pipe Line Cases* to show that the present act does not cover a pipe line transporting oil for its own refining purposes only. The discussion referred to is that concerning the Uncle Sam Oil Company. But that company's pipe line was used for the "sole purpose of conducting oil from its own wells to its own refinery." This was held not to be transportation under the Act. Here, however, it is the purchase from many sources and subsequent carriage that determine the applicability of the statute to Valvoline.

Appellant presses its argument beyond the question whether it comes under the Act. If it does, it urges, the Act is in violation of the due process clause in that by the involuntary change of status from private to common carrier its property is taken. It looks upon the various regulatory provisions of the Interstate Commerce Act as inseparable from the valuation provisions of § 19a(a) and (e). The losses feared, from present or future legislation other than the valuation provisions, may never occur. The data required by the present order may never be used to fix rates. No such information as to other pipe lines has been so used. Publicity alone may give effective remedy to abuses, if any there be.[7] This legislation was intended to free interstate commerce in oil from practices believed to be detrimental, and in that connection accessibility of valuation information to the Congress is essential. Its separate significance being apparent, we confine ourselves to § 19a(a) and (e). The

---

[6] Cf. *Pennsylvania R. Co.* v. *Public Utilities Comm'n*, 298 U. S. 170, 174.

[7] II Sharfman, The Interstate Commerce Commission, 96.

constitutionality of such requirements was settled by the *Pipe Line Cases* and we see nothing that excepts appellant from their effect. The smallness of the operation is immaterial.[8]

*Affirmed.*

MR. JUSTICE BUTLER took no part in the consideration or decision of this case.

---

[8] *National Labor Relations Board* v. *Fainblatt,* 306 U. S. 601, 606.