## CHAMPLIN REFINING CO. *v.* UNITED STATES ET AL.

No. 21. Argued November 8, 9, 1945.—Reargued October 18, 21, 1946.—Decided November 18, 1946.

*Dan Moody* argued the cause for appellant on the original argument. With him on the briefs was *Harry O. Glasser.* Both argued the cause on reargument.

*Edward Dumbauld* argued the cause for the United States and the Interstate Commerce Commission, appel-

lees.  With him on the brief were *Solicitor General Mc-Grath, Assistant Attorney General Berge, Daniel W. Knowlton* and *Nelson Thomas.*

MR. JUSTICE JACKSON delivered the opinion of the Court.

The Interstate Commerce Commission, acting under § 19 (a) of the Interstate Commerce Act,[1] ordered the appellant to furnish certain inventories, schedules, maps and charts of its pipe line property.[2]  Champlin's objections that the Act does not authorize the order, or if it be construed to do so is unconstitutional, were overruled by the Commission and again by the District Court which dismissed the company's suit for an injunction.[3]  These

---

[1] ". . . the commission shall . . . investigate, ascertain, and report the value of all the property owned or used by every common carrier subject to the provisions of this Act. . . .  The commission shall make an inventory which shall list the property of every common carrier subject to the provisions of this Act in detail, and show the value thereof as hereinafter provided, and shall classify the physical property, as nearly as practicable, in conformity with the classification of expenditures for road and equipment, as prescribed by the Interstate Commerce Commission." 37. Stat. 701, 49 U. S. C. § 19a.

[2] On May 15, 1941, the Interstate Commerce Commission, by letter addressed to the president of the Champlin Refining Company, requested that the company prepare and file with the Commission "a complete inventory of the pipe line property of the Champlin Refining Company, except land, showing the quantities, units, classes, kinds, and condition thereof."  The Commission enclosed with its letter copies of its Valuation Orders Nos. 26 and 27, with which the inventory was to comply.  The Champlin company did not respond to the request in a manner satisfactory to the Commission, and on June 12, 1944, the Commission made the order of which the company here complains.  It directed the company to comply with the provisions of Valuation Orders Nos. 26 and 27 within ninety days of the service of the order.

[3] In response to the Commission's letter of May 15, 1941, the Champlin company filed with the Commission information and charts which it believed would satisfy the Commission's request.  The Com-

questions of law are brought here by appeal. Judicial Code § 238, 28 U. S. C. § 345.

Champlin owns and operates a line of six-inch pipe five hundred and sixteen miles in length lying in five states. Originating at Champlin's Enid, Oklahoma refinery, it crosses Kansas, Nebraska, a part of South Dakota, and ends in Iowa. It is used only to convey the company's own refinery products to its own terminal stations at Hutchinson, Kansas; Superior, Nebraska; and Rock Rapids, Iowa, at each of which the line connects with storage facilities from which deliveries are made.

The statute, so far as relevant, says that it shall apply "to common carriers engaged in" "transportation of oil or other commodity" by pipe line from one state to another. It provides also that "common carrier" includes "all pipeline companies." [4] This language on its face would seem to cover the appellant's operation.

---

mission, however, returned that report to the company, because in it the company had not recognized that it was a statutory common carrier and had not compiled the report from that viewpoint. The company then requested a hearing before the Commission to determine its status. On December 14, 1942, and on reargument, June 12, 1944, the Commission decided that appellant is a common carrier subject to the provisions of the Act. After the Commission had issued its supplementary order of June 12, 1944, appellant petitioned the district court for an injunction against the order. In accordance with §§ 46 and 47 of Title 28, U. S. C., the district judge convened a three judge court, which heard the case and dismissed appellant's petition.

[4] § 1. "(1) That the provisions of this Act shall apply to common carriers engaged in—

"(b) The transportation of oil or other commodity . . . by pipe line . . . from one State . . . to any other State . . .

"(3) (a) The term 'common carrier' as used in this Act shall include all pipe-line companies; express companies; sleeping-car companies; and all persons, natural or artificial, engaged in such transportation as aforesaid as common carriers for hire." 41 Stat. 474, as amended, 48 Stat. 1102, 49 U. S. C. § 1. The last words of § 1 (3) (a), "engaged in such transportation as aforesaid as common carriers for hire," do

Champlin contends, however, that the "transportation" mentioned in the Act does not refer to the carriage of one's own goods. The District Court has found that Champlin is the sole owner of the products transported through its pipe line; it has never transported, offered to transport, or been asked to transport any products belonging to any other company or person; its pipe line does not connect with any other pipe line but only with storage tanks at the three terminal points; there are no facilities for putting any petroleum product into the line other than at the Enid refinery; delivery of the products at the three terminal points is made from Champlin's storage tanks by means of truck racks or railroad tank car racks and is not made directly from the pipe line in any instance; no tariffs stating transportation charges have been filed with the Interstate Commerce Commission or with any state commission or regulatory body.

Because of these facts the appellant suggests that the language and holding of this Court concerning the Uncle Sam Oil Company in *The Pipe Line Cases,* 234 U. S. 548, approved in *Valvoline Oil Company* v. *United States,* 308 U. S. 141, govern this case. The Uncle Sam Company operation is described as "simply drawing oil from its own wells across a state line to its own refinery for its own use, and that is all . . . ." *The Pipe Line Cases,* 234 U. S. 548, 562. The Court considered this was not "transportation" within the meaning of the Act.

But we think it would expand the actual holding of that case to apply its conclusion to Champlin. The controlling fact under the statute is transporting commodities from state to state by pipe line. Admittedly Champlin is not a common carrier in the sense of the common law carrier for hire. However, the Act does not stop at this but

---

"not affect the generality of the first clause as to pipe-line companies." *Valvoline Oil Co.* v. *United States,* 308 U. S. 141, 146.

goes on to say that its use of the term "common carrier" is to include all pipe line companies—a meaningless addition if it thereby included only what the term without more always had included. While Champlin technically is transporting its own oil, manufacturing processes have been completed; the oil is not being moved for Champlin's own use. These interstate facilities are operated to put its finished products in the market in interstate commerce at the greatest economic advantage.

Examination of Champlin's pricing methods supports the view that appellant is engaged in transportation even though the products are still its own when moved. The District Court found that price at the terminal points includes f. o. b. price at the Enid refinery and an additional sum called a differential. The differential is the through railroad freight rate from Enid to the final destination (usually the purchaser's place of business), less the carrying charges from the pipe line terminal to final destination. The District Court found, however, that competitive and other conditions "sometimes cause departures from the prices arrived at in accordance with the formula above described." Appellant states that as to some deliveries "rail rates were used merely as a basis for calculating a delivered price, not as a charge for transportation." Even so, and even though departures from the calculated differential are substantial and frequent, we think this practice points up a significant distinction from the *Uncle Sam* case.

We hold that Champlin's operation is transportation within the meaning of the Act and that the statute supports the Commission's order to furnish information.

Appellant further contends that, as so construed, the Act exceeds the commerce power of Congress and violates the due process clause of the Fifth Amendment because, it is argued, this interpretation converts a private pipe line into a public utility and requires a private carrier to

become a common carrier. But our conclusion rests on no such basis and affords no such implication. The power of Congress to regulate interstate commerce is not dependent on the technical common carrier status but is quite as extensive over a private carrier. This power has yet been invoked only to the extent of requiring Champlin to furnish certain information as to facilities being used in interstate marketing of its products. The commerce power is adequate to support this requirement whether appellant be considered a private carrier or a common carrier.

The contention that the statute as so construed violates the due process clause by imposing upon a private carrier the obligations of a conventional common carrier for hire is too premature and hypothetical to warrant consideration on this record. The appellant in its entire period of operation has never been asked to carry the products of another and may never be. So far, the Commission has made no order which changes the appellant's obligations to any other company or person. If it does, it will be timely to consider concrete requirements and their specific effects on appellant. At present, appellant is asked only to provide information about a subject within the power possessed by Congress and delegated to the Commission, and that cannot be considered a taking of property even if it arouses appellant's premonitions.

We hold that the order before us is authorized by statute and that in this respect the statute is within the commerce power and does not offend the Fifth Amendment.

*Affirmed.*

MR. JUSTICE REED, with whom MR. JUSTICE FRANK-FURTER, MR. JUSTICE DOUGLAS and MR. JUSTICE BURTON join, dissenting.

This appeal brings into question the extent to which the Interstate Commerce Act covers pipe lines by virtue of.

**36**

the provisions of § 1 and § 19a.[1]  Acting under the authority of these sections, the Interstate Commerce Commission called upon the appellant, Champlin Refining Company, for reports deemed appropriate for it to make, if it is a common carrier under the act.  The appellant challenged the Commission's order on the ground that it was not covered by the sections.

Champlin owns a pipe line for the carriage of oil or other similar commodity from its refinery in Oklahoma to various distributing points in other states.  It carries no commodities except its own produced in its own refinery and delivered at the ends of the pipe line into its own storage or holding tanks for sale to its customers.  It also is sole owner of the stock of the Cimarron Valley Pipe Line Company, admittedly an intrastate common carrier, that supplies the Champlin refinery with its crude oil.  The Commission's orders for valuation reports do not treat

---

[1] 49 U. S. C. § 1:

"(1) . . . The provisions of this chapter shall apply to common carriers engaged in—

"(b) The transportation of oil or other commodity, except water and except natural or artificial gas, by pipe line, or partly by pipe line and partly by railroad or by water;

　　　·　　　　　·　　　　　·　　　　　·　　　　　·

"(3) (a) The term 'common carrier' as used in this chapter shall include all pipe-line companies; express companies; .sleeping-car companies; and all persons, natural or artificial, engaged in such transportation as aforesaid as common carriers for hire . . . ."

49 U. S. C. § 19a: ·

". . . The Commission shall . . . investigate, ascertain, and report the value of all the property owned or used by every common carrier subject to the provisions of this chapter . . . .  The Commission shall . . . make an inventory which shall list the property of every common carrier subject to the provisions of this chapter in detail, and show the value thereof as hereinafter provided, and shall classify the physical property, as nearly as practicable, in conformity with the classification of expenditures for road and equipment, as prescribed by the Interstate Commerce Commission."

Champlin and Cimarron as a unitary operation. The Commission, at this bar, disclaimed expressly any intention to test the subjection of Champlin's distributing pipe line to Commission power by Champlin's ownership of the Cimarron stock. As the Court treats the situation as though Champlin's distributing pipe line, between the refinery and the sale tanks only, were involved, we accept for the purpose of this dissent the Commission's view of the test to be applied to Champlin.

Section 1 of the act applies its provisions to "common carriers engaged in the transportation of oil" or similar commodities. In *The Pipe Line Cases,* 234 U. S. 548, and *Valvoline Oil Co.* v. *United States,* 308 U. S. 141, this Court interpreted the term "common carrier" to include all interstate pipe-line companies that are engaged, within the purview of the act, in the transportation of oil. In these cases, pipe-line companies that carried only their own oil, although all or a large part of it was purchased from producers prior to its carriage in the pipe lines, were held common carriers within the meaning and purpose of the act, though not common carriers in the technical sense of holding one's self out to carry indiscriminately all oil offered, because the act's evident purpose was to bring within its scope all pipe lines that would carry all oil offered "if only the offerers would sell" at the carrier's price. In the *Valvoline* case, this interpretation of the 1906 Act, 34 Stat. 584, was found to have been carried into the act as amended in 1920, 41 Stat. 474, despite certain changes in language. 308 U. S. at 145.

It is to be noted, however, that the *Pipe Line* and *Valvoline* cases did not bring within the scope of the Interstate Commerce Act all pipe lines that carried oil interstate. If the companies were common carriers in substance, the act made them so in form. Those pipe lines held covered by the act in *The Pipe Line Cases* and *Valvoline* were found common carriers in substance because they purchased and

carried all oil offered. The Interstate Commerce Act continually has required such carriers to be engaged in the transportation of oil or other commodities. In *The Pipe Line Cases,* a company, Uncle Sam Oil Company, though operating a pipe line carrying oil, was held beyond the act's reach because not engaged in the transportation of oil as a common carrier within the purpose of the act.

> "When, as in this case, a company is simply drawing oil from its own wells across a state line to its own refinery for its own use, and that is all, we do not regard it as falling within the description of the act, the transportation being merely an incident to use at the end." 234 U. S. at 562.

There has been no change bearing on this question in the applicable acts since *The Pipe Line Cases.* As a matter of statutory construction, we see no reason to change from this Court's long-standing interpretation. If Congress desires to undertake regulation of the transportation of an interstate carrier, in substance a private carrier, it understands the method of approach. 49 U. S. C. § 304 (a) (3). There is no pertinent legislative history to support so broad an interpretation of pipe line legislation. The evil sought to be remedied was the mastery of oil through control of the gathering facilities.[2] If a line does not carry oil of others, it is not transporting within the contemplation of the act.

In the *Uncle Sam* case it was said that the transportation of oil from well to refinery was "merely an incident to use at the end." We see no difference between the use contemplated by the Uncle Sam Company and this company.

---

[2] 234 U. S. at 558–59:

"By the before mentioned and subordinate lines the Standard Oil Company had made itself master of the only practicable oil transportation between the oil fields east of California and the Atlantic Ocean and carried much the greater part of the oil between those points."

Each carries its own oil for the same ultimate purpose—to reach the market.

Nor can we see any significant distinction from the *Uncle Sam* case in the practice of Champlin to use frequently the freight rate from Enid to the final destination as a measure of the addition to Enid refinery, f. o. b. price that it will charge at its distributing tanks. This practice is departed from to meet competition. Naturally some transportation cost must be added to the refinery price for deliveries elsewhere. How much it is or how it is calculated does not seem to us to bear upon the question of whether Champlin is "a common carrier engaged in the transportation of oil" within the scope of the act.

We would have a very different case than the one before us if Congress had provided that all owners of pipe lines carrying oil in interstate commerce should give appropriate information to the Interstate Commerce Commission. This is not what § 19a does. It requires reports only from "every common carrier subject to the provisions" of the act. When an enterprise is "subject to the provisions" of the act is defined by § 1 (1) (b) and § 1 (3). Therefore, it is not § 19a but § 1 that must be construed. The definition of § 1 flows not only into § 19a but also into various other sections. Once an enterprise is found to be included in § 1, the Interstate Commerce Act subjects it to § 19a and other provisions dealing with common carriers "subject to" the act. Thus, to give two instances, it must provide equal and reasonable transportation to all comers, (§ 1 (4)–(6)); and it must file a schedule of rates (§ 6 (1)). If, therefore, any doubt is felt about the applicability of some of these requirements, the doubts are properly to be taken into account in determining the scope of § 1. The range of servitudes to which this pipe line is subjected by including it in § 1 bears vitally upon whether such a construction should be given to § 1.

For the reasons detailed above, we do not think that Champlin is covered by the act and we would reverse the decree of the District Court.