CITIES SERVICE COMPANY,
Petitioner in No. 12,428,
Arkansas Fuel Corporation and M. L. Benedum, Petitioners in No. 12,429,

v.

SECURITIES AND EXCHANGE COMMISSION, Respondent,
and
The Pennroad Corporation, James W. Hearn, Paul S. Hearn and Eleanor Hearn, Intervenors.

Nos. 12428, 12429.

United States Court of Appeals
Third Circuit.

Argued May 8, 1958.
Decided July 22, 1958.

Cravath, Swaine & Moore and Joseph L. Weiner, New York City (Bruce Bromley, John D. Calhoun, Donald M. Swan, Jr., and John F. Hunt, Jr., New York City, on the brief), for Cities Service Co., petitioners.

S. Hazard Gillespie, Jr., New York City (Davis, Polk, Wardwell, Sunderland & Kiendl, New York City, Blanchard, Goldstein, Walker & O'Quin, Shreveport, La., Henry A. Bergstrom, Weller, Wicks & Wallace, Pittsburgh, Pa., H. C. Walker, Jr., Shreveport, La., Henry A. Bergstrom, Pittsburgh, Pa., John I. Brokaw, on the brief), for Ark. Fuel Oil Corp. and L. M. Benedum, petitioners.

Joseph B. Levin, Asst. Gen. Counsel, Washington, D. C. (Thomas G. Meeker,

Gen. Counsel, Solomon Freedman, Asst. Director, Division of Corporate Regulation, Securities and Exchange Commission, Washington, D. C., on the brief), for respondent.

Percival E. Jackson, New York City (Theodore N. Tarlau, New York City, on the brief), for The Pennroad Corp. and Louis E. Marron.

Harold B. Dondis, Boston, Mass. (Walter L. Landergan, Jr., Rich, May & Bilodeau, Boston, Mass., on the brief), for James W. Hearn, et al.

Before MARIS, GOODRICH and HASTIE, Circuit Judges.

HASTIE, Circuit Judge.

In this petition Cities Service Co. (hereinafter, Cities), Arkansas Fuel Oil Corp. (hereinafter, Fuel Oil), and M. L. Benedum, a principal stockholder of Fuel Oil, are asking that we review an order of the Securities and Exchange Commission requiring either the elimination of the publicly held minority interest in the common stock of Fuel Oil or the disposition of Cities' majority holding of this stock. This order was based upon the Commission's conclusion that the present distribution of ownership rights and voting power in Fuel Oil constitutes such a complexity within a registered holding company system as the Commission may and in the circumstances should disapprove and correct under Section 11 (b) (2) of the Public Utility Holding Company Act of 1935.

The petitioners now say that the Commission erred in finding a Section 11(b) (2) violation in the present ownership and control of Fuel Oil. Beyond defending its ruling on the merits, the Com-

mission asserts that this issue is now foreclosed as res judicata. Exploration of this res judicata claim necessitates examination not only of the issues of this case, but also of the matters involved and decided in a related S.E.C. proceeding recently reviewed by the Court of Appeals for the Second Circuit with all of the present petitioners participating as parties.

Section 11 of the Public Utility Holding Company Act of 1935, 49 Stat. 803, 15 U.S.C.A. § 79k, is concerned with the integration and simplification of registered holding company systems. For a number of years the Securities and Exchange Commission has been exercising its Section 11 powers with reference to a utilities holding company system of which the petitioner Cities has been the dominant entity. In the course of the numerous steps required and taken for divorcing utility and non-utility interests and otherwise simplifying the system there came a time when Cities owned some 52% of the common stock of its subsidiary Fuel Oil, a registered holding company in the fuel oil field, while 48% of this stock was publicly held. In sanctioning the Section 11(e) plan which left the common stock of Fuel Oil thus divided the Commission noted that the continued existence of a publicly held minority interest in Fuel Oil "presents a problem which may require corrective action" under Section 11(b) (2).[1] Accordingly, the Commission reserved jurisdiction over "the resolution of problems presented by the continued existence of a minority public interest in Fuel Oil after consummation of the plan." In the meantime, both

---

1. This subsection makes it the duty of the Commission:

   "To require by order, after notice and opportunity for hearing, that each registered holding company, and each subsidiary company thereof, shall take such steps as the Commission shall find necessary to ensure that the corporate structure or continued existence of any company in the holding-company system does not unduly or unnecessarily complicate the structure, or unfairly or inequitably

distribute voting power among security holders, of such holding-company system. * * * Except for the purpose of fairly and equitably distributing voting power among the security holders of such company, nothing in this paragraph shall authorize the Commission to require any change in the corporate structure or existence of any company which is not a holding company, or of any company whose principal business is that of a public-utility company."

Cities and Fuel Oil continued of record to be registered holding companies. But at this stage of the reorganization Fuel Oil applied to the Commission for an order declaring that it was no longer a holding company within the meaning of the Act. Such an order was entered, but qualified, with the consent of Fuel Oil, to provide that for the purpose of resolving the unsettled question of the minority public stock interest, as to which the Commission earlier had reserved jurisdiction, Fuel Oil should still be considered a registered holding company.

Thereafter, Cities, invoking Section 3 (a) (5) of the Act, 15 U.S.C.A. § 79c(a) (5), applied to have itself and its subsidiaries declared exempt from the provisions of the statute. This application noted the Commission's reservation of jurisdiction of the question of the minority interest in Fuel Oil and recited that the granting of Cities' application would make this reserved question moot. In these circumstances, the Commission ordered a hearing for consideration of both the requested exemption and the unresolved question of what, if anything, to do about the minority public interest in Fuel Oil. The order for this consolidated hearing recited that "the application of Cities for exemption and the reserved issue in the Section 11 (e) plan proceeding are related and involve common issues of fact and law". The order also listed specific questions to be considered; among them, "[w]hether the continued existence of the publicly-held minority interest in Fuel Oil complies in all respects with the provisions of Section 11(b) (2) of the Act and is fair and equitable to the persons affected thereby."

Thus, it was apparent from the beginning that the question whether the distribution of the common stock of Fuel Oil created a complexity requiring correction under Section 11(b) (2) of the Act was common and vital to both controversies in the consolidated proceedings. On the one hand, it was the very question reserved in the earlier proceeding. On the other, this item of unfinished business under Section 11(b) (2) made doubtful the propriety of immediately exempting Cities from the obligations of a registered holding company. Although the petitioners now argue that the Section 11(b) (2) question was in some way different in the two controversies, we do not find the slightest indication of such a thought in anything said or done by the Commission in constituting or deciding the consolidated administrative proceeding, or by any part in briefing or arguing its contentions.

The decisive finding of the Commission at the conclusion of the consolidated hearing was that the existence of a publicly held minority interest in Fuel Oil, while Cities exercised voting control through its majority holding, was a complexity which caused an inequitable distribution of voting power and which should be removed either by disposition of Cities' interest in Fuel Oil or by the elimination of the public minority interest. By the same token, the Commission concluded that it would be detrimental to the public interest to relieve Cities of the status and obligation of a registered holding company while this complexity remained.[2] Two orders followed, one directing the elimination of the Section 11(b) (2) complexity, and the other denying the requested exemption.[3] The petitioners have seen fit to seek review

2. The Commission stated its conclusion as to the two consolidated matters in these words:

"We are of the view that the existence of the public minority interest in Fuel Oil constitutes a complexity and results in an inequitable distribution of voting power within the meaning of Section 11(b) (2) of the Act which pre-

cludes the grant of an exemption under the 'unless and except' clause of Section 3(a). We are of the further view that this condition can be satisfactorily rectified only by eliminating the public minority interest in Fuel Oil or by Cities disposing of its interest in Fuel Oil."

3. The orders were not entered at the same time because the Commission gave the

of these two orders by different courts of appeals. Review of the order denying Cities and its subsidiaries exemption from the provisions of the Act was sought in the Court of Appeals for the Second Circuit. On the other hand, the aggrieved parties have now appealed to this court to review the order requiring a change in the ownership of the common stock of Fuel Oil.

The Court of Appeals for the Second Circuit sustained the Commission's denial of the requested exemption. Cities Service Co. v. Securities and Exchange Commission, 2 Cir., 1957, 247 F.2d 646. In its opinion the court explicitly addressed itself to the question "whether the elimination of the minority interest is required by § 11(b) (2) * * *," 247 F.2d at page 651, treating the existence of complexity requiring correction under Section 11(b) (2) as decisive of the ultimate question whether Cities was entitled to exemption under Section 3(a) (5). The court reviewed the evidence and the law and concluded its opinion with this statement of what was being decided:

> "Since we find that the Commission still has jurisdiction over both Cities and Fuel and can require Fuel Oil to comply with § 11(b) (2) by eliminating the minority interest, and since there is substantial evidence to support its finding of an inequitable distribution of voting power, we affirm the decision and order of the Commission denying the application of Cities Service for exemption. * * *" 247 F.2d at page 655.

■ This decision made the litigated Section 11(b) (2) issue res judicata. For the accepted rule is that "where there is an appeal from a judgment, the determination by the appellate court of issues actually litigated is conclusive between the parties in a subsequent action on a different cause of action." Restatement, Judgments, § 69

(1). Cf. Southern Pacific R. Co. v. United States, 1897, 168 U.S. 1, 48–49, 18 S.Ct. 18, 42 L.Ed. 355. We think our statement of what actually occurred before the Commission and in the Court of Appeals for the Second Circuit has sufficiently demonstrated that the court fully considered and explicitly sustained the Commission's finding and conclusion as to a Section 11(b) (2) violation in the divided ownership of Fuel Oil stock.

■ The petitioners have sought to avoid the impact of this conclusion by arguing that what has been found to constitute a violation of Section 11(b) (2) for a particular purpose by the Second Circuit, may not amount to a violation of that section for a different purpose here. The argument is thought to be supported by United States v. Champlin Refining Co., 1951, 341 U.S. 290, 71 S.Ct. 715, 95 L.Ed. 949, in its relation to Champlin Refining Co. v. United States, 1946, 329 U.S. 29, 67 S.Ct. 1, 91 L.Ed. 22. However, in attempting comparisons between rulings on res judicata in various circumstances we must not forget the reminder of the Supreme Court that "[w]hat was involved and determined in the former suit is to be tested by an examination of the record and proceedings therein, including the pleadings, the evidence submitted, the respective contentions of the parties, and the findings and opinion of the court. * * *" See State of Oklahoma v. State of Texas, 1921, 256 U.S. 70, 88, 41 S.Ct. 420, 423, 68 L.Ed. 831. In the Champlin litigation a finding that a pipeline company was a "common carrier" subject generally to regulation under the Interstate Commerce Act, 49 U.S.C.A. § 1 et seq. was held not to foreclose as a matter of res judicata the question whether the company should be subject as a "common carrier" to particular requirements of the Interstate Commerce Act which were not involved in the first case. A majority of the Court analyzed the circumstances and issues of these two cases as pre-

parties an opportunity—which they did not utilize—to submit a plan for elim-

inating the complexity before formally ordering that this be done.

senting different legal problems controlled by different considerations. But in the present litigation all concerned have recognized—at least until after the present res judicata claim was advanced—that both branches of the consolidated proceedings turned on a single conception of what amounts to a complexity inconsistent with the standards of Section 11(b) (2). This matter was not decided twice or in the light of differing criteria for the two branches of the consolidated proceeding. But once it was decided, separate types of implementation appropriate to the two branches of the consolidated proceedings were required. Both the denial of the exemption requested by Cities and the requirement that appropriate affirmative steps be taken to correct the complexity were direct consequences of a single legal characterization of the Fuel Oil stock situation as a violation of Section 11(b) (2). Indeed, even now, although the petitioners assert that the Section 11(b) (2) problem was different in the two aspects of the proceedings before the Commission, they do not describe or analyze the alleged difference. We are satisfied that there is no difference and that the legal conclusion reached by the Court of Appeals for the Second Circuit, that the existence of the minority interest in Fuel Oil was properly held to violate Section 11 (b) (2), is res judicata in the context of the petitioners' present claims.

■ Petitioners urge a second point as to which no claim of res judicata is made. Even if the present arrangement of ownership rights and control within Fuel Oil is properly condemned under Section 11(b) (2) there is an additional question whether the actual elimination of the minority interest or some less drastic remedy is appropriate to correct the situation. The petitioners say that the Commission decided upon the most drastic remedy without giving them a reasonable opportunity to be heard on this matter of choice among remedies. Accordingly, they say they are now entitled at least to have the cause remanded with direction to hear the parties on this question.

We already have pointed out that the Commission's formal order which called for these consolidated proceedings listed specific "matters and questions * * * presented for consideration", among them: "Whether the continued existence of the publicly held minority interest in Fuel Oil complies in all respects with the provisions of Section 11(b) (2) of the Act and is fair and equitable for the persons affected thereby." We think this was rather plain notice that the Commission proposed to decide whether the elimination of the minority interest should be required and invited the parties to address themselves to this, among other questions, at the hearing. In fact, any other procedure would have been rather surprising, for an administrative proceeding under Section 11(b) (2) is not like a criminal trial in which the question of guilt and the determination of sentence are characteristically the subject of separate hearings at different times. One of the characteristic virtues of the administrative handling of such problems as we have here is freedom from any such formalism as would require the separate consideration and adjudication of wrong and remedy. Indeed, the very language of Section 11 (b) (2) pictures the administrative hearing on an alleged violation of that Section as a proceeding to determine what remedies, if any, are necessary and appropriate. Thus, it is the stated function and duty of the Commission "to require by order, after notice and opportunity for hearing, that each registered holding company * * * shall take * * * steps * * * [to correct certain inequities]."

Perhaps even more important for present purposes, the parties themselves made it clear by their actions at the hearing that they understood that the Commission was considering both what, if anything, was wrong with the Fuel Oil stock situation and what, if anything, should be done about it. Thus, the open-

ing brief of Cities for the consolidated proceedings discussed and rejected as unreasonable and unfair various proposals for dealing with the minority stock interest, including a proposal for its elimination. Fuel Oil in its brief stressed the contention that the Commission was without power to eliminate the minority public interest. Benedum, the third petitioner here, submitted a memorandum objecting to any action which would require him to sell his holdings which constitute a substantial part of the publicly held minority stock. Other representatives of minority stockholders, who are intervenors in support of the Commission in this court, urged with equal vigor that the public minority interest must be eliminated.

In argument to the Commission, counsel for Cities had this to say:

"I tell you further that so far as these supposed remedies are concerned, let's take the first, a suggestion that Cities part with its holdings of the Arkansas Company. * * *

"I think it would be a very serious blow to the company if we parted with our control and our responsibility for that management. Or take the other, that this suggestion that we ought to take the minority out. Need I tell you how many years of hearings would be spent here with this Commission in an attempt to establish what was a fair ratio? * * *"

Counsel for Fuel Oil argued to the same effect, adding that the Fuel Oil Board of Directors had by resolution instructed him "to oppose any order providing for the elimination of a minority public interest in the company."

While these references are not exhaustive, we think they more than suffice to show that the parties understood that the question of the appropriate Section 11(b) (2) remedy was in issue during the consolidated hearings and addressed themselves to it. We also find it significant that the formal order requiring the elimination of the minority interest in Fuel Oil was not entered immediately after the Commission announced its decision in the consolidated proceedings, but came much later pursuant to a motion for a formal order, after it appeared that the Cities and Fuel Oil would not act in accordance with the decision without a formal order. All parties adversely affected had notice to appear to oppose this motion for an order directing that the minority interest be eliminated. None responded with any suggestion that it had not had an adequate hearing on the remedy or that it wished to make any additional submission with reference to remedy. In these circumstances, we are forced to agree with the Commission's view that the present desire of Cities and Fuel Oil to have a further hearing on the remedy question is an afterthought.

■ On the record the actual choice made by the Commission among proposed remedies was peculiarly the type of decision which calls into play the expertise and discretion of the administrative agency. We find no basis for disturbing it. Cf. In re Standard Gas & Electric Co., 3 Cir., 1945, 151 F.2d 326.

The order of the Commission will be affirmed.