

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-19-2005

# USA v. Samuels

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-3044

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"USA v. Samuels" (2005). *2005 Decisions.* Paper 1154.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1154

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

<u>NOT PRECEDENTIAL</u>

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 04-3044

UNITED STATES OF AMERICA

vs.

JULIAN SAMUELS, a/k/a Michael Smith,
a/k/a Trigger,
                              Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Criminal No. 03-cr-00503)
District Judge:  The Honorable Berle M. Schiller

_____

Submitted Under Third Circuit LAR 34.1(a)
March 7, 2005

BEFORE: NYGAARD, McKEE, and RENDELL, <u>Circuit</u> <u>Judges</u>.

(Filed May 19, 2005)

_____

OPINION OF THE COURT
_____

NYGAARD, <u>Circuit</u> <u>Judge</u>.

Appellant Julian Samuels pleaded guilty to: (1) possession with intent to distribute more than five grams of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B); (2) possession with intent to distribute more than five grams of cocaine base within 1,000 feet of a school, in violation of 21 U.S.C. § 860(a); (3) possessing a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1); and (4) being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).  Samuels conditioned his plea on maintaining his right to appeal the District Court's denial of his motion to suppress the firearm, bag of narcotics, and money obtained during a police search.  We have jurisdiction under 28 U.S.C. § 1291, and will affirm.

**I.**

On July 7, 2002, Philadelphia Police received an anonymous telephone tip regarding a man with a gun at Arch and Edgewood Streets.  The man was described as a heavyset, stocky, black male, wearing a blue baseball hat, blue jeans, and a two-toned tan shirt.  Several officers, including Charles Buck, Rashad Guess, Jermane Bennett, and Dominic Cole heard a radio call about the report and responded to the area.  The area surrounding Arch and Edgewood Streets is described as a "high crime area" where many violent crimes, including a shooting just weeks before, had taken place. When Officers Buck and Guess got to the scene they saw Samuels.

Samuels was on the steps of a house on the corner with his back toward the officers.  Samuels matched the description from the call, so Officer Guess asked to speak

to him.  Samuels kept his back to the officers and did not acknowledge them.  Samuels then went up the stairs while keeping his back to the officers and continuing to ignore their attempts to engage him in conversation.

At the hearing before the District Court, the officers testified that Samuels appeared to be nervous and was looking around while moving only his head and the upper part of his body.  The officers believed there was something near Samuels' waist that he did not want the officers to see.  At some point, Samuels turned and Officer Buck saw Samuels' waist for the first time.  He testified that he "noticed a bulge around the waist area" and believed it could be a gun.  The officers then drew their guns and ordered Samuels to put his hands up.

Rather than comply, Samuels continued to look around and move his hands.  Three officers testified that Samuels' hands were going up and down, and Officer Buck testified that he was particularly concerned about the location of Samuels' right hand, which was near the bulge in his waist.  When Samuels did not comply with the officers' demand that he put his hands up, Officers Buck and Guess approached him and grabbed his hands.  Officer Bennett then removed the "bulge" from Samuels' waist.  It was, indeed, a gun.  Samuels was then taken into custody and a search incident to arrest revealed crack cocaine as well as cash.

In addition to the testimony of Officers Buck, Bennett, and Cole, who were called as witnesses by the government, a man by the name of Ernest Moss testified as a defense

witness. Moss testified that he was visiting a friend at the house on the corner of Arch and Edgewood Streets, and a few minutes after Samuels arrived, Officers Buck and Guess "jumped [out of their car] with their guns out." He testified that Samuels raised his hand and said "I didn't do anything" at which point he was grabbed, handcuffed, and searched. Moss also testified that when the officers searched Samuels he only remembered them discovering money and keys. Finally, Moss admitted that he had been previously convicted of assault, carrying a firearm, and a narcotics offense.

The District Court evaluated the credibility of both the officers and Moss and found the testimony of the officers to be more credible: "[A]ccordingly, looking at all of evidence presented as a whole, I credit the credible and consistent testimony given by Officers Buck, Bennett and Cole." (J.A. at 175). The District Court then found that the officers conducted a proper stop based upon reasonable suspicion, and therefore denied Samuels' motion to suppress.

Samuels then entered into a conditional guilty plea with the Government. In this plea, Samuels and the Government agreed that a term of 248 months' imprisonment was an appropriate sentence.[1] Although not binding on the District Court, it accepted this term and sentenced Samuels to 248 months. Samuels has appealed the District Court's denial of his motion to suppress.

_____

1    The guideline range was 248–298 months' imprisonment.

While Samuels' appeal was pending, the United States Supreme Court decided *United States v. Booker*, 543 U.S. __, 125 S.Ct. 738 (2005), in which the Sentencing Guidelines were declared to be advisory, rather than mandatory. Samuels now asks that we declare his guilty plea invalid because it was not knowing and intelligent. Essentially, Samuels argues that, because he erroneously believed the guidelines to be mandatory, he agreed to the sentence of 248 months; whereas, under a system where the Guidelines are merely advisory, he would have argued for a lower sentence.

## II.

*A. Samuels Was Not Seized Until The Officers Physically Restrained Him*

The first step in evaluating Samuels' claims is determining when Samuels was seized by the officers. In his brief, Samuels claims that seizure occurred at the time the officers "positioned themselves at the bottom of the steps of the porch and directed demands at Appellant, who was walking up the steps with his back to them." (Appellant's Br. at 15). This is simply incorrect. A seizure occurs in one of two situations: (1) when officers apply physical force to the person being seized, or (2) when force is absent, where officers make a show of authority *and the person seized submits to the show of police authority*. *See California v. Hodari D.*, 499 U.S. 621, 626–28 (1991); *United States v. Valentine*, 232 F.3d 350, 358 (3d Cir. 2000).

A seizure does not occur when an officer approaches an individual and asks a few questions. *Florida v. Bostick*, 501 U.S. 429, 434 (1991). That is exactly what the officers

5

did here. They approached Samuels and asked to speak with him. Even if we assume for the sake of argument that there was a show of authority, Samuels did not submit. Rather, Samuels kept his back to the officers, walked away from the officers up the porch steps, and refused to answer their questions. He did not comply with the officers' request to speak with him, and therefore, he did not submit to the show of authority. *Cf. United States v. Coggins*, 986 F.2d 651, 654 (3d Cir. 1993) (finding that complying even temporarily with an officer's orders was sufficient to create a seizure).

When the officers saw Samuels' waist and noticed a bulge, they took out their guns and, at that point, a show of authority existed. Even then, however, Samuels did not comply with the officers' request to put his hands up. Although it appears Samuels placed one hand up at one point, he continued to make hand movements toward his waist; thus, he never submitted to a show of authority. *See Valentine*, 232 F.3d at 359 (concluding that even if an individual momentarily complies with a show of authority, such compliance is not sufficient to effectuate a seizure). Therefore, it was not until the officers physically restrained Samuels' arms that a seizure occurred. *Id*. at 358.

## B. The Officers Had Reasonable Suspicion To Seize Samuels

At the time the officers physically restrained Samuels, they had reasonable suspicion sufficient to justify a stop pursuant to *Terry v. Ohio*, 329 U.S. 1 (1968). Contrary to Samuels' arguments on appeal, the officers were not relying solely on an anonymous tip. Rather, the officers based the decision to seize Samuels on the tip, the

high crime area, the visible bulge in Samuels waist band, and perhaps most importantly, Samuels conduct. Samuels was acting nervous while being questioned by the officers and when officers demanded that Samuels raise his hands, he continued to make gestures toward his waist. An officer may make a *Terry* stop when "the facts available to the officer at the moment of the seizure . . . warrant a man of reasonable caution in the belief that criminal activity may be afoot." *Johnson v. Campbell*, 332 F.3d 199, 205 (3d Cir. 2003) (quoting *Terry*, 329 U.S. at 21–22, 30) (internal quotations omitted). Here, the information available to the officers provided such reasonable suspicion.

Although, under some circumstances Samuels's actions may have been consistent with lawful activity, this does not divest the officers of reasonable suspicion. The officers provided "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant" the seizure of Samuels. *United States v. Moorefield*, 111 F.3d 10 at 13 (3d Cir. 1997) (quoting *Terry*, 329 U.S. at 21).

*C. The Officers Acted Appropriately In Conducting A Limited Search For Weapons*

Samuels also challenges the manner in which the officers conducted the search, which revealed the firearm. After restraining Samuels arms, Officer Bennett lifted Samuels' shirt and reached for the area where he had seen the bulge that appeared to be a gun. He then removed a gun. Samuels claims that *Terry* only authorizes police to conduct a frisk or pat-down of an individual's outer clothing and then, upon finding a readily identifiable weapon, police may extend the search into pockets. Thus, Samuels

7

objects because, rather than conducting a full pat-down of his entire body, police went directly to the suspicious area and removed the gun.

When making a *Terry* stop, an officer is permitted to make a limited protective search for concealed weapons when the individual gives the officer reason to believe he or she may be armed and dangerous. *Adams v. Williams*, 407 U.S. 143, 146 (1972). This search must be limited in scope to its protective purpose. *Id*. Here, the officers conducted a limited intrusion designed to address their immediate concerns regarding a possible threat to their safety. This case is nearly identical to *Adams*, in which the Supreme Court upheld an officer's conduct when he reached into a car and removed a gun from an individual's waistband. In both cases, the officer did not conduct a pat-down; rather, the officer conducted a more limited search by going directly to the area where the officer knew the weapon was most likely to be. Accordingly, the officers in this case acted within the bounds of *Terry* by conducting a search limited in scope to that necessary to secure their safety. *Id*. Thus, the gun was legally discovered and the District Court did not err in denying Samuels' motion to suppress.

## III.

Finally, we turn to Samuels' argument that his guilty plea was invalid because it was not knowing and intelligent. A plea that is knowing and intelligent at the time it is entered is not rendered invalid because of a subsequent change in the law. *Untied States v. Brady*, 397 U.S. 742, 757 (1970). Samuels knowingly and intelligently waived his

8

right to appeal his sentence when he entered his guilty plea. Therefore, he cannot now attempt to take advantage of the Supreme Court's decision in *Booker*. *United States v. Lockett*, No. 04-2244, 2005 U.S. App. LEXIS 7784, at *17 (3d Cir. May 5, 2005). Accordingly, Samuels sentence is affirmed.